**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Rose WONG, Defendant-Appellee.**

**No. 74–1636.**

United States Court of Appeals,
Ninth Circuit.

Sept. 23, 1974.

Certiorari Granted June 1, 1976.

See 96 S.Ct. 2224.

James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for plaintiff-appellant.

Allan Brotsky, Garry, Dreyfus, McTernan & Brotsky, San Francisco, Cal., for defendant-appellee.

Before KOELSCH and SNEED, Circuit Judges, and FIRTH,* District Judge.

## OPINION

KOELSCH, Circuit Judge:

Appellee was subpoenaed to testify before the Grand Jury investigating illegal gambling and police payoffs in the Chinatown area of San Francisco. At that time the government already possessed incriminating evidence against her; she was a target of the Grand Jury's investigation and likely to be indicted.[1] Immediately before questioning appellee, the district attorney informed her of her privilege against self-incrimination, and of the possible consequences of testifying falsely. He then asked questions, tailored by his previously obtained knowledge of appellee's criminal involvement, true answers to which would have been incriminating. Appellee's false answers formed the basis for a subsequent perjury indictment. 18 U.S.C. § 1623.

Following her arraignment on the charge, appellee moved to suppress her answers. The district court determined, based on extensive evidence adduced by affidavit and at a hearing, that appellee, who was born in China and uses English only as a second language, had not understood that portion of the prosecutor's questioning designed to inform her of her right to remain silent.[2] Consequently the district court, relying on *United States v. Rangel,* 365 F.Supp. 155 (W.

D.Tex.1973), and the implications of statements in our decision in *Robinson v. United States,* 401 F.2d 248 (9th Cir. 1968), ordered the testimony suppressed. The government has appealed. We affirm.

We emphasize at the outset that affirmance is rested not on the self-incrimination clause, but rather on the due process clause of the Fifth Amendment. The perjurious answers were induced by an unfair procedure violative of the latter clause. That unfairness stems from the threat the procedure poses to the values protected by the privilege.

 The government correctly points out that the privilege against self-incrimination does not afford a defense to a witness under compulsion who, rather than refusing to answer (or, if improperly compelled to answer, giving incriminating answers), gives false testimony. *E. g., United States v. Knox,* 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed. 275 (1969); *Glickstein v. United States,* 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911); *Robinson v. United States, supra; United States v. Orta,* 253 F.2d 312 (5th Cir. 1958); *United States v. Parker,* 244 F.2d 943 (7th Cir. 1957). The reason is fundamental: "[T]he immunity afforded by the constitutional guaranty relates to the past, and does not endow the person who testifies with a license to commit perjury." *Glickstein, supra,* 222 U.S. at 142, 32 S.Ct. at 73. Because the judicial system is committed to interpreting the privilege against self-incrimination generously obviating totally the danger of oppressive governmental conduct both to those who remain silent and to those who unwillingly incriminate themselves because of improper governmental compulsion, the

---

* The Honorable Robert Firth, United States District Judge for the Central District of California, sitting by designation.

1. At the hearing the government's attorney acknowledged, and the district court found, that before appellee was subpoenaed, the government possessed testimony of two co-operating undercover San Francisco police officers that they had visited appellee at her illegal gambling house, that she had paid them bribes, and arranged for future payments; she was therefore a prospective defendant when called to testify.

2. The district court's resolution of the conflicting evidence is not clearly erroneous, and we are bound by the determination that she did not understand her rights.

legal system reciprocally need not and cannot tolerate perjury. If a witness is improperly compelled to incriminate himself, he may do so and later be protected, but he may not avoid the object of the compulsion by perjury and be protected by the privilege (*United States v. Knox, supra*, 396 U.S. at 82, 90 S.Ct. 363)—the judicial system cannot properly operate if it countenances the breach of trust implicit in that course. *See United States v. Orta, supra*, 253 F.2d at 314–315.

 But that principle is inapplicable to this matter. We cannot ignore the fact that the procedure employed by the government was fraught with the danger, if indeed not intended, of placing appellee in the position of either perjuring or incriminating herself. We agree with the Fifth Circuit that the government's use of such a procedure against a witness it knows to be virtually in the position of a defendant is unfair, unless accompanied by warnings which in fact apprise the witness of the right to remain silent and which thoroughly obviate the substantial danger created of involuntary self-incrimination or perjury, and that the induced perjured testimony must be suppressed. *United States v. Rangel*, 496 F.2d 1059 (5th Cir. 1974); *United States v. Mandujano*, 496 F.2d 1050 (5th Cir. 1974). *See United States v. Kreps*, 349 F.Supp. 1049 (W.D.Wis.1972); *United States v. Fruchtman*, 282 F.Supp. 534 (N.D.Ohio 1968); *United States v. Thayer*, 214 F.Supp. 929 (D.Colo.1963).

Unlike the situation with an ordinary witness,[3] the government knows in advance that when it subpoenas someone in appellee's position, a so-called "putative defendant," and asks directly incriminating questions, it is thereby placing the witness in a dangerous dilemma.

The imposing ex parte nature of grand jury inquisitions, coupled with the predictable ignorance of many lay witnesses about the intricacies of the privilege against self-incrimination, creates a foreseeable probability that the witness will subject himself to criminal liability. Subpoenaing and questioning a witness under such circumstances is a form of governmental compulsion seeking to incriminate a witness out of his own mouth which threatens to circumvent the independent prosecutorial model mandated by the privilege. We cannot ignore the obvious fact that, while a few witnesses placed in such a position might honestly wish to confess, in the great majority of cases asking incriminating questions of a putative defendant, were the witness fully informed of his rights, would be an idle task, as the witness would simply remain silent. The utility of the procedure to the government, and its inherent unfairness and danger, lies in the wholly predictable fact that the witness will be ignorant of or not understand the right to remain silent, and be compelled by answering to subject himself to criminal liability. The government should not engage in such a practice.

██ We do not hold that the government may not question a putative defendant. Some witnesses may indeed wish voluntarily to confess, and all may have non-privileged information useful to the grand jury's task—witnesses have no privilege per se to refrain from giving incriminatory information against others. But before such information can be compelled, the danger created by compelling answers to incriminatory questions from a putative defendant must be thoroughly obviated by an effective warning of the right to remain silent. As the warning given here was not effective,[4] because not understood,

---

3. While *Rangel* and *Mandujano* are the only precedents directly in point, prior decisions refusing to suppress perjury have intimated that the result reached would be different if the questions had been asked of a putative defendant. *See, e. g., Robinson, supra*, 401 F.2d at 250; *Orta, supra*, 253 F.2d at 314; *Parker, supra*, 244 F.2d at 946–949.

4. We do not intimate that the government acted in bad faith. On the contrary, the government's attorney carefully informed appellee of her rights and believed she understood them. Nevertheless, the government having employed a procedure calculated to exploit her lack of understanding, it runs the risk of a subsequent determination that

the unfairness of the procedure remained undissipated, and due process requires the testimony be suppressed.

The judgment is affirmed.

its curative procedures were inadequate- and the due process violation undissipated.