# UNITED STATES *v.* WONG

No. 74–635.   Argued December 6, 1976—Decided May 23, 1977

*William F. Sheehan III* argued the cause for the United States.   On the brief were *Solicitor General Bork, Assistant Attorney General Thornburgh,* and *Deputy Solicitor General Frey.*

*Allan Brotsky* argued the cause and filed a brief for respondent.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to decide whether a witness who, while under investigation for possible criminal activity, is

called to testify before a grand jury and who is later indicted for perjury committed before the grand jury, is entitled to have the false testimony suppressed on the ground that no effective warning of the Fifth Amendment privilege to remain silent was given.[1]

## (1)

Rose Wong, the respondent, came to the United States from China in early childhood. She was educated in public schools in San Francisco, where she completed eight grades of elementary education. Because her husband does not speak English, respondent generally speaks in her native tongue in her household.

In September 1973 respondent was subpoenaed to testify before a federal grand jury in the Northern District of California. The grand jury was investigating illegal gambling and obstruction of state and local law enforcement in San Francisco. At the time of her grand jury appearance, the Government had received reports that respondent paid bribes to two undercover San Francisco police officers and agreed to make future payments to them. Before any interrogation began, respondent was advised of her Fifth Amendment privilege;[2] she then denied having given money

---

[1] In *United States* v. *Mandujano*, 425 U. S. 564 (1976), we held that false testimony by a grand jury witness suspected by federal prosecutors of criminal involvement was admissible in a subsequent perjury trial. Although the witness in *Mandujano* had been warned of the Fifth Amendment privilege, the Court of Appeals had mandated suppression of the perjurious testimony on the ground that the witness had not been provided with full *Miranda* warnings. In this Court, three separate opinions expressed varying reasons, but all eight participating Justices agreed that the perjured testimony was improperly suppressed.

[2] The prosecutor gave respondent the following warnings:

"You . . . need not answer any question which you feel may . . . incriminate you. . . . [Y]ou [have] the right to refuse to answer any question which you feel might incriminate you. . . . [I]f you do give an answer, that answer may be used against you in a subsequent criminal

or gifts to police officers or having discussed gambling activities with them. It is undisputed that this testimony was false.

(2)

Respondent was indicted for perjury in violation of 18 U. S. C. § 1623. She moved to dismiss the indictment on the ground that, due to her limited command of English, she had not understood the warning of her right not to answer incriminating questions. At a suppression hearing, defense counsel called an interpreter and two language specialists as expert witnesses and persuaded the District Judge that respondent had not comprehended the prosecutor's explanation of the Fifth Amendment privilege;[3] the court accepted respondent's testimony that she had thought she was required to answer all questions. Based upon informal oral findings to this effect, the District Court ordered the testimony suppressed as evidence of perjury.

Accepting the District Court's finding that respondent had not understood the warning, the Court of Appeals held that due process required suppression where "the procedure employed by the government was fraught with the danger . . . of placing [respondent] in the position of either perjuring or incriminating herself." 553 F. 2d 576, 578 (CA9 1974). Absent

---

prosecution, if in fact the Government should decide to prosecute you for any crime. . . .˸ You also have the right to consult with an attorney prior to answering any question here today. . . . [I]f you cannot afford an attorney, . . . we would see that an attorney is afforded to represent you. . . . [I]f you do answer any questions and should you knowingly give any false testimony, or false answers to any questions, you would be subject to prosecution for the crime of perjury under the Federal Laws." 2 Tr. 52–53.

[3] The District Court found, however, that respondent understood the oath and the consequences of giving false testimony, and that she understood the questions that were asked of her. Thus, no issue regarding the due process consequences, if any, of the absence of either factor was addressed by the District Court or the Court of Appeals.

effective warnings of the right to remain silent, the court concluded, a witness suspected of criminal involvement by the Government will "not understand the right to remain silent, and [will] be compelled by answering to subject himself to criminal liability." *Ibid.* In the Court of Appeals' view, the ineffectiveness of the prosecutor's warning meant that "the unfairness of the procedure remained undissipated, and due process requires the testimony be suppressed." *Id.*, at 579.

Following our decision in *United States* v. *Mandujano*, 425 U. S. 564 (1976), we granted certiorari. 426 U. S. 905 (1976). We now reverse.

(3)

Under findings which the Government does not challenge, respondent, in legal effect, was unwarned of her Fifth Amendment privilege. Resting on the finding that no effective warning was given, respondent contends that both the Fifth Amendment privilege and Fifth Amendment due process require suppression of her false testimony. As to her claim under the Fifth Amendment testimonial privilege, respondent argues that, without effective warnings, she was in effect forced by the Government to answer all questions, and that her choice was confined either to incriminating herself or lying under oath. From this premise, she contends that such testimony, even if knowingly false, is inadmissible against her as having been obtained in violation of the constitutional privilege. With respect to her due process claim, she contends, and the Court of Appeals held,[4] that, absent warnings, a witness is placed in the dilemma of engaging either in self-incrimination or perjury, a situation so inherently unfair as to

---

[4] The Court of Appeals rejected respondent's argument that the Fifth Amendment privilege required suppression. The court held:

"[T]he privilege against self-incrimination does not afford a defense to a witness under compulsion who, rather than refusing to answer (or, if improperly compelled to answer, giving incriminating answers), gives false testimony." 553 F. 2d 576, 577.

require suppression of perjured testimony. We reject both contentions.

As our holding in *Mandujano* makes clear, and indeed as the Court of Appeals recognized, the Fifth Amendment privilege does not condone perjury. It grants a privilege to remain silent without risking contempt, but it "does not endow the person who testifies with a license to commit perjury." *Glickstein* v. *United States,* 222 U. S. 139, 142 (1911). The failure to provide a warning of the privilege, in addition to the oath to tell the truth, does not call for a different result. The contention is that warnings inform the witness of the availability of the privilege and thus eliminate the claimed dilemma of self-incrimination or perjury. Cf. *Garner* v. *United States,* 424 U. S. 648, 657–658 (1976). However, in *United States* v. *Knox,* 396 U. S. 77 (1969), the Court held that even the predicament of being forced to choose between incriminatory truth and falsehood, as opposed to refusing to answer, does not justify perjury. In that case, a taxpayer was charged with filing false information on a federal wagering tax return. At the time of the offense, federal law commanded the filing of a tax return even though the effect of that requirement, in some circumstances, was to make it a crime not to supply the requested information to the Government.[5] To justify the deliberate falsehood contained in his tax return, Knox, like respondent here, argued that the false statements were not made voluntarily, but were compelled by the tax laws and therefore violated the Fifth Amendment. The Court rejected that contention. Although it recognized that tax laws which compelled filing the returns injected an "element of pressure into Knox's predicament at the time he filed the forms," *id.,* at 82, the Court held that by answering falsely the taxpayer

---

[5] Knox filed the false return prior to this Court's decisions in *Marchetti* v. *United States,* 390 U. S. 39 (1968), and *Grosso* v. *United States,* 390 U. S. 62 (1968).

took "a course that the Fifth Amendment gave him no privilege to take." *Ibid.*

In this case respondent stands in no better position than Knox; her position, in fact, is weaker since her refusal to give inculpatory answers, unlike *Knox,* would not have constituted a crime. It follows that our holding in *Mandujano,* that the Fifth Amendment privilege does not protect perjury, is equally applicable to this case.

## (4)

Respondent also relies on the Court of Appeals' holding that the failure to inform a prospective defendant of the constitutional privilege of silence at the time of a grand jury appearance is so fundamentally unfair as to violate due process. In the Court of Appeals' view, the Government's conduct in this case, although in good faith, so thwarted the adversary model of our criminal justice system as to require suppression of the testimony in any subsequent perjury case based on the falsity of the sworn statement.[6] We disagree.

First, the "unfairness" urged by respondent was also present in the taxpayer's predicament in *Knox,* yet the Court there found no constitutional infirmity in the taxpayer's conviction for making false statements on his returns. Second, accepting, *arguendo,* respondent's argument as to the dilemma posed in the grand jury procedures here,[7] perjury is nevertheless not a permissible alternative. The "unfairness" perceived by respondent is not the act of calling a prospective defendant to testify before a grand jury[8] but rather the failure effec-

---

[6] The Court of Appeals did not suggest why, assuming a due process violation had occurred, suppression of respondent's testimony was constitutionally required.

[7] Cf. *United States* v. *Mandujano,* 425 U. S., at 594–598 (BRENNAN, J., concurring in judgment).

[8] There is no constitutional prohibition against summoning potential defendants to testify before a grand jury. *United States* v. *Dionisio,* 410 U. S. 1, 10 n. 8 (1973); *United States* v. *Mandujano, supra,* at 584 n. 9,

tively to inform a prospective defendant of the Fifth Amendment privilege. Thus, the core of respondent's due process argument, and of the Court of Appeals' holding, in reality relates to the protection of values served by the Fifth Amendment privilege, a privilege which does not protect perjury.

Finally, to characterize these proceedings as "unfair" by virtue of inadequate Fifth Amendment warnings is essentially to say that the Government acted unfairly or oppressively by asking searching questions of a witness uninformed of the privilege. But, as the Court has consistently held, perjury is not a permissible way of objecting to the Government's questions. "Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them." (Footnote omitted.) *Bryson* v. *United States,* 396 U. S. 64, 72 (1969); *United States* v. *Mandujano,* 425 U. S., at 577, 585 (BRENNAN, J., concurring in judgment); *id.,* at 609 (STEWART, J., concurring in judgment). Indeed, even if the Government could, on pain of criminal sanctions, compel an answer to its incriminating questions, a citizen is not at liberty to answer falsely. *United States* v. *Knox, supra,* at 82–83. If the citizen answers the question, the answer must be truthful.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

594 (BRENNAN, J., concurring in judgment). The historic availability of the Fifth Amendment privilege in grand jury proceedings, *Counselman* v. *Hitchcock,* 142 U. S. 547 (1892), attests to the Court's recognition that potentially incriminating questions will frequently be asked of witnesses subpoenaed to testify before the grand jury; the very purpose of the inquiry is to ferret out criminal conduct, and sometimes potentially guilty persons are prime sources of information.