577 F.2d 194
 UNITED STATES of America
v.
James R. TONELLI, Appellant.
 No. 77-2414.
 United States Court of Appeals,
Third Circuit.
 Argued March 27, 1978.
Decided April 28, 1978.
 
 Robert J. Del Tufo, U. S. Atty., Samuel A. Alito, Jr., Asst. U. S. Atty., Newark, N. J., for appellee.
 Thomas F. Campion, Sharon T. Jacobson, Shanley & Fisher, Newark, N. J., for appellant.
 Before HUNTER, WEIS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 In preparing a true-false test, perceptive teachers, while aware of the possibility of pure chance-guessing, will phrase the false statement to be so close to the truth that students are required to be precise in making their choice. In drafting an indictment for perjury, however, a grand jury must take exactly the opposite tack. No guessing is tolerated and the indictment must set out the allegedly perjurious statements and the objective truth in stark contrast so that the claim of falsity is clear to all who read the charge. In the appeal at hand, the indictment and evidence adduced failed to meet that standard. Accordingly, we must vacate the conviction of the defendant for false swearing before a grand jury.
 
 
 2
 The defendant, James R. Tonelli, was indicted for making false statements to a grand jury in violation of 18 U.S.C. § 1623.[1] At the conclusion of a bench trial, the district judge found defendant guilty and sentenced him to two years in prison and a $500 fine. He then suspended the sentence and placed defendant on two years probation.
 
 
 3
 The case grew out of an investigation by a federal grand jury in Newark, inquiring into possible criminal violations in connection with the management and investment of funds belonging to the Paper Industry Union Management Fund.[2] The inquiry disclosed that persons seemingly not connected with the Union or the Pension Fund had approached various banks and offered to deposit the Fund's monies in exchange for business or personal loans. Government agents discovered that the defendant had been involved with the Fund's purchase of three $100,000 certificates of deposit from the Lugoff, South Carolina branch of the American Bank and Trust Company. Although the defendant was not affiliated with either the Union or the Fund, his father was president of the International Union and his cousin, James Fabio, was Administrator of the Pension Fund.
 
 
 4
 Defendant was served with a subpoena duces tecum and appeared before the grand jury on October 21, 1974. He testified he had recommended the Lugoff bank to Fabio, but denied he had sought remuneration from the bank in exchange for placing funds with it. On November 8, 1974, at his request, defendant again appeared before the same grand jury to correct certain inaccurate testimony, unrelated to the deposit of Pension Fund monies, that he had given on his initial appearance. A few months later, in a one-count indictment, defendant was charged with violating § 1623 by knowingly making false and material declarations in response to certain questions propounded to him during the October 21st grand jury proceedings.
 
 
 5
 Essentially, the indictment listed false answers dealing with three issues. The first two were whether Tonelli was involved with the placement of Pension Fund money with the American Bank and Trust Company and whether he had personally handled the transmission of one or more Fund checks to the bank; the third was whether defendant had discussed placement of Pension Fund monies with Ray Clark, an officer of the bank, in order to obtain a loan for himself. The district judge found that there had been inadequate proof as to the third issue but was satisfied that falsity with respect to the first two had been proven.
 
 
 6
 The defendant contends that we should dismiss the indictment because he was not told he was a target of the grand jury probe and had not been advised of his rights under the Fifth and Sixth Amendments. Although recognizing the thrust of Supreme Court holdings in United States v. Washington, 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977), and United States v. Wong, 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977), that there is no constitutional right to receive special warnings before testifying before the grand jury, defendant urges us to exercise our supervisory powers as did the court in United States v. Jacobs, 531 F.2d 87 (2d Cir. 1976), remanded for reconsideration, 429 U.S. 909, 97 S.Ct. 299, 50 L.Ed.2d 277 (1976), on remand, 547 F.2d 772 (2d Cir.), cert. granted, 431 U.S. 937, 97 S.Ct. 2647, 53 L.Ed.2d 254 (1977). We note that on December 16, 1977 the Justice Department adopted a grand jury practice of warning a putative defendant on the record before he testifies and in light of this recent development, we see no need to exercise our supervisory powers at this time.
 
 
 7
 We do, however, perceive more merit to another contention raised by the defendant. In United States v. Slawik, 548 F.2d 75 (3d Cir. 1977), we said:
 
 
 8
 "(A) conviction under 18 U.S.C. § 1623 may not stand where the indictment fails to set forth the precise falsehood alleged and the factual basis of its falsity with sufficient clarity to permit a jury to determine its verity and to allow meaningful judicial review of the materiality of those falsehoods." 548 F.2d at 83-84.
 
 
 9
 We find the same prosecutorial deficiency which undermined the Slawik conviction the failure to specifically allege in the indictment the precise falsehoods charged exists here. See United States v. Crocker, 568 F.2d 1049 (3d Cir. 1977). This defect is compounded because the Assistant United States Attorney failed to ask specific, unambiguous questions while interrogating defendant in the grand jury room. Since the district court found only two of the three allegations had been established by the prosecution, we review only those items. Of necessity, a detailed description of the indictment and the testimony before the grand jury is required.
 
 I.
 
 10
 We discuss first the issue of participation in the placement of pension funds.
 
 
 11
 Summarizing defendant's pertinent testimony before the grand jury, the district court stated "when asked if he 'participated in the placement of pension fund monies for the purchase of certificates of deposit . . . including within that concept making recommendations to any individual as to any bank or other financial institution from which certificates of deposit could be purchased,' Tonelli replied that he had recommended the American Bank and Trust, Lugoff branch, to James Fabio."
 
 
 12
 Paragraph 8 of the indictment charges that, in response to certain questions, Tonelli made false declarations:
 
 
 13
 Q. Mr. Tonelli, did you ever have occasion to participate in the placement of funds of the Paper Industry Union Management Pension Fund? By placement, I mean purchase of certificate of deposits (sic ) with pension fund moneys?
 
 
 14
 A. No, sir.
 
 
 15
 Q. Mr. Tonelli, in connection with these certificates of deposit that the Pension Fund purchased at the American Bank & Trust Company in Lugoff, South Carolina, did you ever in any way assist Mr. Fabio to make those purchases other than introducing him the first time to Mr. Clark?
 
 
 16
 A. No, sir.
 
 
 17
 Q. But he was the one that took care of purchasing that certificate of deposit?
 
 
 18
 A. Yes, sir.
 
 
 19
 Q. Personally?
 
 
 20
 A. Yes, sir.
 
 
 21
 Q. And you had nothing to do with that?
 
 
 22
 A. None whatsoever.
 
 
 23
 Q. Is that correct?
 
 
 24
 A. Yes, sir.
 
 
 25
 Paragraph 9 of the indictment states that the material declarations were knowingly, willfully, and deliberately false in that "James R. Tonelli, in truth and in fact . . . personally secured the placement of such funds at the American Bank and Trust Company. . . ."
 
 
 26
 The indictment, however, lifts the initial questioning and response out of context and omits the qualifying colloquy which followed in the record. After he first inquired about placement of funds, the prosecutor proceeded:
 
 
 27
 Q. When I say participate in the placement of pension fund monies for the purchase of certificates of deposit, I am including within that concept making recommendations to any individual as to any bank or other financial institution from which certificates of deposit could be purchased. Did you ever have occasion to, in that sense, participate in the placement of funds?
 
 
 28
 It is obvious that at this point the prosecutor qualified and defined what he meant by the word "participate," recognizing that his initial question was broad and ambiguous. The defendant's answer is significant:
 
 
 29
 A. Do you mean if I made any recommendations for someone to place any moneys in any particular bank?
 
 
 30
 Q. Yes, sir, did you ever do that?
 
 
 31
 A. Is that what you are referring to? (Emphasis added.)
 
 
 32
 Q. Yes, among other concepts, did you ever make any recommendations?
 
 
 33
 The defendant then explained that he had introduced his cousin, Fabio, to Assistant Vice President Clark.
 
 
 34
 There is no contention that Tonelli was untruthful in his statement that he did introduce Fabio to the bank officer and, therefore, his response indicating that he did participate in the placement of funds did not constitute perjury. The defendant's initial denial of involvement, standing alone, was not true, but when the prosecutor subsequently defined "participated in the placement of . . . monies . . . for the purchase" as including a recommendation of the bank, Tonelli answered truthfully. Thus, by quoting a question and answer in isolation, the indictment did not accurately represent the statements made by the defendant and in ignoring the qualifying definitions used by the prosecutor, it was misleading. "A charge of perjury may not be sustained by the device of lifting a statement of the accused out of its immediate context and thus giving it a meaning wholly different than that which its context clearly shows." Fotie v. United States, 137 F.2d 831, 842 (8th Cir. 1943). Van Liew v. United States, 321 F.2d 674, 678 (5th Cir. 1963).
 
 
 35
 Moreover, responding to the prosecutor's qualifying definition, defendant asked, "(i)s that what you are referring to?" and the prosecutor replied, "(y)es, among other concepts, did you ever make any recommendations?" When Tonelli answered affirmatively, the prosecutor made no further reference to any "other concepts" that he might have intended to be included within the phrase "participated in placement."
 
 
 36
 The transcript of the grand jury proceedings shows defendant admitted that he had personally participated in the sense of making a recommendation a context suggested by the prosecutor himself. The Assistant United States Attorney's definition allowed the defendant to limit his answer to an area far narrower, perhaps, than the government intended. To that extent, the defendant could be said to have evaded the broad "other concepts" which the prosecutor wished to probe. A charge of perjury, however, is not a substitute for careful questioning on the part of a prosecutor, and in this respect the interrogation ran afoul of the Supreme Court's teaching in Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). There, the Court concluded that an earlier perjury statute did not reach witnesses' answers as long as they were literally true, even if those answers were intentionally misleading.[3] In so holding, the Court stressed the responsibility of the examiner, and we find its observations pertinent here:
 
 
 37
 "If a witness evades, it is the lawyer's responsibility to recognize the evasion and to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination.
 
 
 38
 "It is no answer to say that here the jury found that petitioner intended to mislead his examiner. A jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner; the state of mind of the witness is relevant only to the extent that it bears on whether 'he does not believe (his answer) to be true.'
 
 
 39
 ". . . (T)he perjury statute is not to be loosely construed, nor the statute invoked simply because a wily witness succeeds in derailing the questioner so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." 409 U.S. 358-60, 93 S.Ct. 600-601. (citations omitted).
 
 
 40
 We find that, with respect to the placement issue, the indictment fails to specify in what particular the defendant's reply was false. The statement in paragraph 9 that the declaration was false because the defendant "personally secured the placement of such funds" at the bank is simply conclusory and not contrary to what the defendant said before the grand jury. Thus, as to the "placement" issue, we conclude that the indictment is defective.
 
 II.
 
 41
 The second statement which the court found to be untruthful, regarding the "handling" issue, is also set out in paragraph 8, which recites the following colloquy:
 
 
 42
 Q. Did you ever handle any pension fund check?
 
 
 43
 A. No, sir.
 
 
 44
 Q. And you never handled any checks that went to the American Bank & Trust Company?
 
 
 45
 A. No, sir.
 
 
 46
 In paragraph 9, the indictment charged that this statement was false because the defendant had "handled the transmission of one or more of the checks of the Paper Industry Union Management Pension Fund to the American Bank and Trust Company." It is immediately apparent that the "truth" paragraph does not track the alleged false answer in paragraph 8; the defendant was not asked if he "handled the transmission" of checks but if he "handled any checks." The two statements are in fact quite different. A person might "handle a transmission" by arranging for others to send, mail or deliver a check. But "handling a check" may very well imply touching the piece of paper, and apparently it was in this sense that the defendant answered the questions before the grand jury.
 
 
 47
 The district court found that the defendant "did in fact 'handle' Pension Fund monies, in any manageable sense of the word, at the time of the original transaction and in conjunction with his August 2, 1972 letter to Ray Clark . . . ." We think this finding does not focus on the critical issue of what was charged in the indictment and said before the grand jury. Once again, what is noteworthy is what the indictment excluded.
 
 
 48
 When defendant denied ever handling any pension fund check, the prosecutor asked: "There would be no reason for your fingerprints to be on any pension fund checks?" Tonelli relied: "(n)ot to my knowledge, no, sir." Some time later, the prosecutor showed Tonelli a check of the Pension Fund in the amount of $100,000 encased in a plastic folder. After the defendant acknowledged that he had not touched the check that day, the prosecutor asked, "(w)ould you have touched the check when you might have seen it with Mr. Fabio?" The defendant answered, "I might have. To my knowledge I don't recall right now."
 
 
 49
 A few minutes later, after warning the defendant about perjury, the prosecutor said:
 
 
 50
 "(I)f at any time during today's Grand Jury proceeding you feel that you have not told the truth in any material respect before this Grand Jury and choose to change your testimony today, you have the right to in effect recant your prior or nontruthful statement and if you do so you cannot be charged with perjury. Do you understand that?
 
 
 51
 "Understanding that, is there anything, any answer of yours or any statement of yours given so far that you wish to modify in any respect?
 
 
 52
 A. Well, there is no modification I can possibly make other than you keep reiterating about the check, whether I touched it or not. Now, to my knowledge, back in '72 I really couldn't tell you whether I did or not and that's the truth."
 
 
 53
 The prosecutor continued examining the defendant about other matters, and then asked him to leave the room. Following Tonnelli's return, the prosecutor resumed his questioning and again offered defendant the opportunity to recant. Stating that he wished to modify only his testimony about the check, "whether I handled it or not," defendant said:
 
 
 54
 "Well, if I actually handled it in my own person, my own being, as I indicated before when Mr. Fabio did come down South, whether he showed me the check, whether I touched it, I might have, and maybe I didn't. I don't recall."
 
 
 55
 It is clear that the defendant interpreted the prosecutor's questions about "handling" to mean "touching," and, taking advantage of the prosecutor's two proper offers of recantation, retreated from his denial of "handling," saying he might have "touched" the check. At this point, if the prosecutor intended the word "handle" to mean other than "touch," it was his responsibility to rephrase the questions. Bronston v. United States, supra. See United States v. Wall, 371 F.2d 398 (6th Cir. 1967). To sustain a perjury charge based on the ambiguous line of questioning used here would require us to assume Tonelli interpreted "handle" to include more than "touching." The record will not allow us to do so and as the Court of Appeals for the Fifth Circuit has observed "(e)specially in perjury cases, defendants may not be assumed into the penitentiary." United States v. Brumley, 560 F.2d 1268 (5th Cir. 1977).
 
 
 56
 At trial, the government offered into evidence a letter dated August 2, 1972 from the defendant to Clark. It read in part: "Enclosed you will find the final deposit regarding my commitment to you, that, I would have by August 1972 $300,000 in your bank." The prosecutor admitted that he had this letter in his possession at the time defendant was testifying before the grand jury. Accepting that "deposit" referred to a check of the Pension Fund, the prosecutor therefore knew that defendant had mailed or caused to be mailed a check to the bank. If the government wished to establish that the defendant had transmitted a check by mail, a proper and specific question could easily have been framed. Since the prosecutor chose to leave the record in an equivocal condition, it cannot be the basis of a false swearing conviction. The indictment and proof of the second issue, therefore, are also deficient.
 
 III.
 
 57
 Because the indictment in this case did not "set forth the precise falsehood(s) alleged and the factual (bases) of (their) falsity with sufficient clarity to permit a jury to determine (their) verity and to allow meaningful judicial review of the materiality of those falsehoods," the conviction here must be vacated. As we stated in Slawik :
 
 
 58
 "To hold otherwise would permit the trial jury to inject its inferences into the grand jury's indictment, and would allow defendants to be convicted for immaterial falsehoods or for 'intent to mislead' or 'perjury by implication', which Bronston specifically prohibited." 548 F.2d at 83-84.[4]
 
 
 59
 In the face of the district court's finding that the defendant was not truthful, it may be argued that the judgment should stand. However, the same considerations applied in Bronston, supra, 409 U.S. at 363, 93 S.Ct. at 602, where the Chief Justice wrote:
 
 
 60
 "It may well be that petitioner's answers were not guileless but were shrewdly calculated to evade. Nevertheless . . . any special problems arising from the literally true but unresponsive answer are to be remedied through the 'questioner's acuity' and not by a federal perjury prosecution."
 
 
 61
 The judgment of the district court will be vacated.
 
 
 
 [1]
 " § 1623 False declarations before grand jury or court
 (a) Whoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both."
 
 
 [2]
 The Fund was affiliated with the United Paperworkers International Union and was then subject to the provisions of the Welfare and Pension Plan Disclosure Act of 1959, 29 U.S.C. § 301 et seq
 
 
 [3]
 Bronston involved a prosecution under 18 U.S.C. § 1621, the general perjury statute. Because § 1623 is a species of perjury, United States v. Gross, 511 F.2d 910, 915 (3d Cir. 1975), we find Bronston applicable here
 
 
 [4]
 Compare United States v. Abrams, 568 F.2d 411, 422-23 (5th Cir. 1978), with United States v. Chapin, 169 U.S.App.D.C. 303, 309, 515 F.2d 1274, 1280 (1975). In United States v. Long, 534 F.2d 1097 (3d Cir. 1976), we noted that at no time during the course of their grand jury testimony did defendants manifest the slightest uncertainty or confusion concerning the meanings of terms used in the questioning. Thus, that case is not applicable to the circumstances here