**In re GRAND JURY PROCEEDINGS.**

**Grand Jury No. 3–27.**

United States District Court,
E.D. Texas,
Beaumont Division.

March 26, 1986.

Joseph C. Hawthorn, Beaumont, Tex.,
for petitioner.

ORDER

COBB, District Judge.

The regular term of the Grand Jury of the Eastern District of Texas, Beaumont Division, in connection with an ongoing investigation to the illegal sale of Schedule 2 drugs,[1] subpoenaed a witness to appear and to "Furnish exemplars of handwriting, printing, finger and palm prints." The witness, a professional person, shall not be named or referred to in this memorandum for obvious reasons.

The witness has filed a motion to quash that subpoena on the grounds that "The current United States Attorney's Manual provides that:

a.   Targets of a grand jury investigation should not be subpoenaed.

b.   If targets of a grand jury investigation are subpoenaed, they should be notified of their status as targets; and

c.   Upon written assertion of their intent to invoke the privilege against self-incrimination, they should be excused.

d.   [The witness] believes that [the witness] may be the target of an investigation of the grand jury before whom he has been subpoenaed and among other objections to testifying, intends to invoke [the] privilege against self-incrimination."

The witness asserts that the U.S. Attorney's office must follow these "regulations" under the "Accardi Doctrine."[2]

█ The so-called *Accardi* doctrine is inapplicable. There, the Immigration and Naturalization Service held various hearings and ordered deportation of an illegal alien. He appealed to the Board of Immi-

---

1.   21 U.S.C. § 812(b)(2), § 812(b)(4).

2.   *U.S. ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

gration Appeals, which affirmed the order. Accardi sought habeas corpus relief because the Board of Immigration Appeals failed to follow its own regulations which provided that its action was final except in cases reviewed by the Attorney General, who originally appointed the members of the Board, and who served at his pleasure. The Board, under rules promulgated by the Attorney General, was required to refer to him all cases which:

(a) The Attorney General directs the Board to refer to him.

(b) The chairman or a majority of the Board believes should be referred to the Attorney General for review of its decision.

(c) The Commissioner requests be referred to the Attorney General by the Board and it agrees. 8 CFR, § 1949, § 90.-12. See 8 CFR, Rev. 1952, § 6.2(h)(1).

The Court held:

The regulations just quoted pinpoint the decisive fact in this case: The Board was required, as it still is, to exercise its own judgment when considering appeals. The clear import of broad provisions for a final review by the Attorney General himself would be meaningless if the Board were not expected to render a decision in accord with its own collective belief....

We think the petition for habeas corpus charges the Attorney General with precisely what the regulations forbid him to do: dictating the Board's decision. The petition alleges that the Attorney General included the name of a petitioner in a confidential list of "unsavory characters" whom he wanted deported....

Clearly, the holding in *Accardi* does not govern this motion to quash the Grand Jury's subpoena. The United States Attorneys' Manual, § 9–11.261 [3] does not rise to the status of the regulations of the Board of Immigration Appeals in *Accardi*.

The witness also urges that the language in *Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) controls. There, it is stated, at p. 235:

Where the rights of individuals are affected it is incumbent upon agencies to follow their own procedures. This is so even where internal procedures are possibly more rigorous than otherwise would be required.

This court holds that the quotation from *Morton v. Ruiz* is inapplicable to this motion to quash a Grand Jury subpoena in an

---

3. UNITED STATES ATTORNEYS' MANUAL. TITLE 9—CRIMINAL DIVISION. 9–11.261. Subpoenaing Targets of the Investigation. A grand jury may properly subpoena a subject or a target of the investigation and question him/her about his/her involvement in the crime under investigation. *See United States v. Wong*, 431 U.S. 174, 179 n. 8, 97 S.Ct. 1823, 1826 n. 8, 52 L.Ed.2d 231 (1977); *United States v. Washington*, 431 U.S. 181, 190 n. 6, 97 S.Ct. 1814, 1820 n. 6, 52 L.Ed.2d 238 (1977); *United States v. Mandujano*, 425 U.S. 564, 573–75 and 584 n. 9, 96 S.Ct. 1768, 1775–76 and 1780 n. 9, 48 L.Ed.2d 212 (1976); *United States v. Dionisio*, 410 U.S. 1, 10 n. 8, 93 S.Ct. 764, 769 n. 8, 35 L.Ed.2d 67 (1973); *Kastigar v. United States*, 406 U.S. 441, 446, 92 S.Ct. 1653, 1657, 32 L.Ed.2d 212 (1972); *Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 102, 84 S.Ct. 1594, 1615–16, 12 L.Ed.2d 698 (1964) (concurring opinion); *Brown v. Walker*, 161 U.S. 591, 610, 16 S.Ct. 644, 652, 40 L.Ed. 819 (1896); *United States v. Friedman*, 445 F.2d 1076 (9th Cir.1971); *United States v. Capoldo*, 402 F.2d 821 (2d Cir.1968); *United States v. Scully*, 225 F.2d 113 (2d Cir.), *cert. denied*, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788 (1955). However, in the context of particular cases such a subpoena may carry the appearance of unfairness. Because the potential for misunderstanding is great, before a known "target" (as defined in USAM 9–11.260, *supra*) is subpoenaed to testify before the grand jury about his/her involvement in the crime under investigation, an effort should be made to secure his/her voluntary appearance. If a voluntary appearance cannot be obtained, he/she should be subpoenaed only after the grand jury and U.S. Attorney or the responsible Assistant Attorney General have approved the subpoena. In determining whether to approve a subpoena for a "target," careful attention will be paid to the following considerations: A. The importance to the successful conduct of the grand jury's investigation of the testimony or other information sought; B. Whether the substance of the testimony or other information sought could be provided by other witnesses; and C. Whether the questions the prosecutor and the grand jurors intend to ask or the other information sought would be protected by a valid claim of privilege.

ongoing drug investigation. *Ruiz* concerned the right of a Papago Indian to receive certain benefits allegedly due him by the Bureau of Indian Affairs.

██ The requirement that the witness must furnish handwriting exemplars, fingerprints and palm prints does not violate his Fourth or Fifth amendment rights. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1951); *United States v. Mara,* 410 U.S. 19 (1973); or even voice exemplars, *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 37 (1973). Thus, the witness may not suppress or quash the subpoena on grounds of self-incrimination or unreasonable search.

The United States Attorney's office has filed with the court an affidavit which shows to the court's satisfaction that the items sought by use of the Grand Jury subpoena are (1) relevant to an investigation, (2) properly within the Grand Jury's jurisdiction, and (3) not sought primarily for another purpose. *See, In Re Grand Jury Proceedings, Appeal of Jacqueline Schofield,* 486 F.2d 85 (3rd Cir.1973), and *In Re Grand Jury Proceedings, Appeal of Jacqueline Schofield,* 507 F.2d 963, at 966 (3rd Cir.1975), referred to as *Schofield I* and *Schofield II.*

For the foregoing reasons, the motion to quash is DENIED.

Because the identity of the professional person involved is not necessary to the rendition of this order, it is not revealed. The affidavit, subpoena, motion to quash referred to above, and any other court papers containing the witness's name or identity shall be SEALED and remain so until further order of this court.