LEROY SHIFFLETT, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 1138-85

Decided November 4, 1987

Counsel

H. Clay Clark, III, for appellant.

W. Mark Dunn, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**DUFF, J.** — Leroy Shifflett, Jr. was found guilty of perjury, pursuant to Code § 18.2-434, and sentenced to one year in the penitentiary. The basis for the perjury conviction was his testimony on behalf of Raymond Hamilton at Hamilton's pretrial suppression hearing on April 29, 1985, *Commonwealth v. Raymond Hamilton*, (Hamilton hearing) and a statement that he made to Lieutenant H. B. Myers on May 2, 1985.

On appeal, Shifflett contends that his conviction should be reversed because he was denied his fifth amendment privilege against self-incrimination and his sixth amendment right to counsel when he testified at the Hamilton hearing. He also contends that his May 2, 1985, statement to Lieutenant Myers was the product of unlawful government conduct and, therefore, inadmissible at his trial for perjury. We find no reversible error and affirm the conviction.

On December 12, 1984, James L. Lilly's residence in McGraheysville, Virginia, was burglarized. On December 20,

1984, the L & S Diner in Harrisonburg, Virginia, was also burglarized. Shifflett became a suspect in the L & S Diner burglary and was questioned by Officer T. Hoover on December 23, 24, and 26, 1984. During the December 23 interrogation, Shifflett admitted that he, a third party, and Joseph Reyes, committed the L & S Diner burglary. Based on this admission, Shifflett was charged with burglary and grand larceny and placed in custody in Rockingham County Jail.

On December 24, 1984, Shifflett told Officer Hoover that Raymond Hamilton was the third party involved in the L & S Diner burglary. He also stated that he had informed Hamilton two weeks before the L & S burglary that the Lilly residence would be vacant and in response, Hamilton told him that he would "take care of it." Shifflett further informed Hoover that he was at Hamilton's residence on the evening of December 20, 1984, and that he helped Hamilton carry a television set, a .22 caliber revolver, and some jewelry into Hamilton's house. Hamilton told him that the items were stolen. Shifflett further stated that he returned to Hamilton's residence the next day where he saw a scanner taken from the L & S Diner burglary and "lots of drugs," described as marijuana.

Deputies Glen Andes and Danny Comer questioned Shifflett on February 13, 1985, and Shifflett told them that he, Hamilton, and an unnamed third party had committed the December 12, 1984, burglary at the Lilly residence. Thereafter, Shifflett was charged with burglary and grand larceny of the Lilly house.

Based on Shifflett's statements and other evidence, the police obtained a warrant to search Hamilton's residence for property taken in the two burglaries and for marijuana. None of the stolen items were discovered at Hamilton's residence; however, the police found cocaine and marijuana. Hamilton was subsequently charged with possession of cocaine. He filed a motion to suppress the cocaine on the ground that the warrant was based upon a false affidavit, and, therefore, the product of an illegal search.

At the suppression hearing on April 29, 1985, Shifflett testified on Hamilton's behalf and stated that he did not have any personal acquaintance with Hamilton; that he did not know where Hamilton lived; that he had never visited his residence; and that he never stated that Hamilton had been involved in criminal activ-

ity. On cross-examination, the Commonwealth's attorney questioned Shifflett about his understanding of the offense of perjury and informed him that the crime carried a maximum penalty of ten years in the penitentiary. However, Shifflett continued to deny that he had informed the police about Hamilton's involvement in the crimes. The court then questioned the Commonwealth about the charges pending against Shifflett. The Commonwealth informed the court that all of the charges had been "finally disposed of."[1] Thereafter, Shifflett continued to testify that he never told Officer Hoover about Hamilton's involvement in the burglaries or about his use of drugs. He also denied telling Deputies Andes and Comer that Hamilton had been involved in the Lilly break-in.

On May 2, 1985, Lieutenant Myers, of the Harrisonburg Police Department, questioned Shifflett concerning his testimony at the Hamilton hearing. Myers advised him of his *Miranda* rights and then Shifflett waived these rights and admitted that he had lied during his testimony. He indicated that he had to choose between perjury or being beaten because he had received a threatening letter that he attributed to Hamilton. On May 23, 1985, Shifflett was indicted for perjury.

At trial, the Commonwealth introduced into evidence the transcript of the Hamilton hearing. It also presented the testimony of Officer Hoover, Lieutenant Myers, and Deputies Comer and Andes. Shifflett did not testify and did not present any evidence.

I.

Shifflett argues that his perjured testimony should have been suppressed because he was not informed of his fifth amendment rights prior to his testimony at the Hamilton hearing. In effect, this assignment of error claims that a witness is entitled to a warning that he has the right to remain silent in order to avoid committing perjury.

The United States Supreme Court has repeatedly held that the fifth amendment does not shield perjury. *See United*

---

[1] The Commonwealth concedes that this response was incorrect. Shifflett had pled guilty to the L & S Diner charges prior to Hamilton's suppression hearing; however, the charges relating to the Lilly burglary were still pending at the time of the hearing. The record shows that Shifflett later pled guilty to the Lilly charges. No issues are raised in this appeal concerning the Commonwealth's response to the trial court.

*States v. Wong*, 431 U.S. 174, 178 (1977); *United States v. Mandujano*, 425 U.S. 564, 577, 582-583, 609 (1976); *Bryson v. United States*, 396 U.S. 64, 72 (1969); *United States v. Knox*, 396 U.S. 77, 82 (1969); *Glickstein v. United States*, 222 U.S. 139, 142 (1911). Although the amendment grants a privilege to remain silent without risking contempt, it does not endow the person who testifies with a license to commit perjury. *Glickstein v. United States*, 222 U.S. at 142. The warnings simply inform the witness that the privilege is available in order to eliminate the dilemma of self-incrimination or perjury. *Cf. Garner v. United States*, 424 U.S. 648, 657-658 (1911).

We hold that Shifflett's testimony was properly admitted at his trial for perjury.[2] Even if we were to find that Shifflett was entitled to a warning of his fifth amendment rights, the failure to provide the warnings is not a defense to a perjury charge. *Mandujano*, 425 U.S. at 578. Accordingly, we affirm the ruling of the trial court.

## II.

Next, we consider Shifflett's argument that he was denied his sixth amendment right to counsel at the time he testified at the Hamilton hearing, thus rendering such testimony inadmissible at his perjury trial.

The law is well settled that an accused is guaranteed the right to the assistance of counsel at any stage of a criminal prosecution where counsel's absence might derogate from the right to a fair trial. *Coleman v. Alabama*, 399 U.S. 1, 7-10 (1970); *United States v. Wade*, 388 U.S. 218, 226 (1967). Accordingly, incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, if, in obtaining this evidence, the accused was denied the assistance of counsel. *Maine v. Moulton*, 474 U.S. 159, 180 (1985). However, "incriminating statements pertaining to *other crimes, as to which the sixth amendment right has not yet attached*, are, of course, admissible at a trial of those offenses." *Id.* at 180, n. 16 (emphasis added).

---

[2] We do not decide whether Shifflett's fifth amendment privilege against self-incrimination was violated in connection with the then pending criminal proceeding involving the Lilly burglary.

Based upon our review of the record, we find that Shifflett's incriminating statements were constitutionally admissible as evidence against him at his trial for perjury.[3] Because the crime of perjury had not yet been committed at the time Shifflett took the stand and began to testify at the Hamilton hearing, his sixth amendment right to counsel did not attach as to that charge. Therefore, the evidence obtained during his testimony is not required to be excluded "simply because other charges were pending at that time." *Moulton*, 474 U.S. at 180.

### III.

Finally, Shifflett argues that his May 2, 1985, statement to Lieutenant Myers was the product of the Commonwealth's improper conduct at the Hamilton hearing and, therefore, inadmissible at his trial for perjury. Generally, the exclusionary rule precludes the use of evidence derived from unlawful government conduct. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963). In the present case, we find that the exclusionary rule is inapplicable. As stated above, Shifflett's constitutional rights were not violated by the use of his Hamilton hearing testimony. Moreover, the record reveals that Shifflett's confession to Lieutenant Myers was the product of a voluntary and knowing waiver of his right to remain silent. Accordingly, we find that the May 2, 1985, statement was properly admitted because it did not result from any unlawful government conduct.

For the reasons set forth in this opinion, the judgment of conviction is affirmed.

*Affirmed.*

Benton, J., and Keenan, J., concurred.

---

[3] We do not decide whether Shifflett's sixth amendment right to counsel was violated in connection with the then pending criminal proceeding involving the Lilly burglary.