TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00085-CR






The State of Texas, Appellant




v.




Tommy Wayne Butterfield, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0961962, HONORABLE BOB PERKINS, JUDGE PRESIDING







 The State brings this interlocutory appeal, challenging the trial court's granting of a motion
to suppress evidence in an aggravated perjury case. See Tex. Code Crim. Proc. Ann. art. 44.01 (West
Supp. 1998). We will affirm the trial court's order.


STATEMENT OF FACTS

 Allegations were made that Butterfield's stepdaughter had been sexually assaulted. (1)
Butterfield was a suspect in the assault. Butterfield's wife, Louisa, agreed to place Butterfield's
stepdaughter with another family for protection and further agreed not to contact her while unsupervised. 
Despite this agreement, on the day Butterfield's stepdaughter was scheduled for a medical examination,
Louisa removed her from daycare, whereafter they both disappeared.

 On February 23, 1996, another trial court held a civil hearing to determine whether the
Department of Protective and Regulatory Services should be named temporary managing conservator of
Butterfield's stepdaughter. Butterfield was subpoenaed to testify at the civil proceeding for the purpose
of determining the location of his wife and stepdaughter. Butterfield attempted to exercise his Fifth
Amendment right against self-incrimination in response to specific questions concerning the whereabouts
of his wife and stepdaughter and any communications he had had with his wife. The judge ordered
Butterfield to answer the questions, threatening to find him in contempt if he refused and to place him in jail
until he answered. Faced with that choice, Butterfield answered the questions.

 On May 7, 1996, Butterfield was indicted for one count of aggravated perjury and two
counts of tampering with a witness. See Tex. Penal Code Ann. § 36. 05 (West 1994 & Supp. 1998) &
§ 37.03 (West 1994). Allegedly untrue testimony Butterfield gave during the course of the February 23rd
civil hearing formed the basis of the aggravated perjury charge. Butterfield filed a motion to suppress the
statements, and the trial court held hearings on the motion on July 2, 1996 and September 6, 1996. In its
order granting Butterfield's motion, the trial court indicated the suppressed statements were those
"particulary described in the oral ruling by the Court on 9/6/96." At the September 6, 1996 pretrial
hearing, with regard to the perjury prosecution, the trial court suppressed all of Butterfield's testimony from
the February 23rd hearing given after Butterfield tried to invoke the Fifth Amendment and the judge
threatened to put him in jail. (2) In one point of error, the State appeals the trial court's granting of the motion
to suppress, contending that the trial court erred in suppressing the statements because Butterfield had no
constitutional protection permitting him to commit perjury.


DISCUSSION


 A trial court has broad discretion in determining the admissibility of evidence. Allridge v.
State, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991). At a hearing on a motion to suppress, the trial
court is the sole and exclusive trier of fact. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App.
1990). In reviewing a trial court's ruling on a motion to suppress evidence, an appellate court must view
the evidence in the light most favorable to the trial court's ruling at the suppression hearing. Carroll v.
State, 911 S.W.2d 210, 222 (Tex. App.--Austin 1995, no pet.). Where, as here, the record contains
the ruling but no findings of fact or conclusions of law, the appellate court must presume that the trial court
found whatever facts were needed to support its ruling. Id. An appellate court will not reverse that ruling
without a showing of a clear abuse of discretion. See Allridge, 850 S.W.2d at 492; Combest v. State,
953 S.W.2d 453, 456 (Tex. App.--Austin 1997, no pet.).

 The Fifth Amendment provides that no person "shall be compelled in any criminal case to
be a witness against himself." U.S. Const. amend. V. Accordingly, a witness can refuse to answer any
question that will subject him to criminal liability. Tuffiash v. State, 948 S.W.2d 873, 879 (Tex.
App.--San Antonio 1997, pet. ref'd). If an inquiry calls for an answer that might reasonably present a
hazard of self-incrimination, a witness may refuse to answer on the ground of privilege, and the fact that an
inquiry is made in the course of a civil proceeding does not interdict the witness's privilege. See Ex parte
Butler, 522 S.W.2d 196, 198 (Tex. 1975).

 Here, Butterfield was subpoenaed to testify, under oath, in a court proceeding. As a
suspect in his stepdaughter's sexual assault, Butterfield faced a legitimate hazard of self-incrimination in
answering questions that might lead to the location of his wife and stepdaughter and evidence which could
link Butterfield to the sexual assault. Despite this, the judge refused to allow him to exercise his Fifth
Amendment right against self-incrimination and ordered him to testify under the threat of contempt. By
presenting Butterfield with the three choices of testifying against himself, possibly committing perjury, or
going to jail, the judge subjected Butterfield to the exact situation which the Fifth Amendment aims to
prevent. See Pennsylvania v. Muniz, 496 U.S. 582, 596 (1990) (citing Doe v. United States, 487 U.S.
201, 212 (1988)) (policy undergirding Fifth Amendment is unwillingness of Supreme Court "to subject
those suspected of crime to the cruel trilemma of self-accusation, perjury, or contempt"); South Dakota
v. Neville, 459 U.S. 553, 563 (1983) (Supreme Court has long recognized that Fifth Amendment prevents
State from forcing choice of "cruel trilemma" on defendant). Thus, Butterfield's testimony was compelled
in violation of his Fifth Amendment right. See Neville, 459 U.S. at 562 (Fifth Amendment prohibits
exertion of physical or moral compulsion on person asserting the privilege); Thomas v. State, 723 S.W.2d
696, 704 (Tex. Crim. App. 1986) (interpreting and defining moral compulsion to include offering defendant
choices, one of which results in penalty, punishment or detriment from which defendant is entitled to be
free).

 Despite the State's urgings, our inquiry ends there. The State argues that the Fifth
Amendment does not permit Butterfield to commit perjury. The State's position, however, requires this
Court to assume that Butterfield testified untruthfully after the judge refused to allow him to invoke his Fifth
Amendment rights. In footnote three of the State's brief, the State asks "for the purposes of understanding
the issue presented in this appeal . . . that this Court assume evidence exists which would establish the falsity
of the specific statements made by [Butterfield] which are detailed herein." Essentially, the State asks this
Court to assume that Butterfield is guilty of the alleged perjury before he has even been tried. This is
counter to the well-established legal presumptions that sworn testimony is presumed to be true and that an
accused is innocent until proven guilty.

 Additionally, the cases the State cites to support its position are distinguishable. In the bulk
of cited cases, the witnesses never invoked their Fifth Amendment rights; rather, they chose to testify falsely
in grand jury proceedings or file false affidavits or tax forms. See United States v. Wong, 431 U.S. 174
(1977) (false statements given in grand jury testimony could be basis for perjury); United States v.
Mandujano, 425 U.S. 564 (1976) (witness who chooses to commit perjury instead of invoking Fifth
Amendment can be prosecuted for perjury); Bryson v. United States, 396 U.S. 64 (1969) (defendant
should have availed himself of legal method for challenging affidavit requirement instead of choosing to
include falsehoods in affidavit); United States v. Knox, 396 U.S. 77 (1969) (defendant should have
invoked Fifth Amendment right instead of filing false tax form). Thus, these cases are not controlling. In
another case, the court actually suppressed statements given by a witness under compulsion. See United
States v. Friedrick, 842 F.2d 382 (D.C. Cir. 1988).


CONCLUSION

 By refusing to permit Butterfield to exercise his Fifth Amendment right, the judge stripped
Butterfield of his constitutional right to decline to answer the questions; consequently, the substance of
Butterfield's compelled testimony thereafter is irrelevant. The statements the State seeks to use were
obtained in violation of Butterfield's Fifth Amendment right, and the trial court could conclude they may not
be used as evidence against Butterfield in the subsequent criminal prosecution for aggravated perjury. See
Tex. Code Crim. Proc. Ann. art. 38.23 (West Supp. 1998). As the State has not demonstrated that the
trial court abused its discretion in granting Butterfield's motion to suppress, we overrule the State's sole
point of error and affirm the order of the trial court.

 


 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and Davis*

Affirmed

Filed: March 12, 1998

Do Not Publish



* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).
1. To protect the victim's identity, we will refer to the victim as "Butterfield's stepdaughter."
2. In particular, the trial court suppressed all statements starting from page twenty-seven of the civil
hearing statement of facts. The State, however, stipulates on appeal that the trial court suppressed all of
Butterfield's statements after page sixteen of the civil hearing statement of facts. We will decide the case
based on the trial court's order and not on the State's stipulation.



te the State's urgings, our inquiry ends there. The State argues that the Fifth
Amendment does not permit Butterfield to commit perjury. The State's position, however, requires this
Court to assume that Butterfield testified untruthfully after the judge refused to allow him to invoke his Fifth
Amendment rights. In footnote three of the State's brief, the State asks "for the purposes of understanding
the issue presented in this appeal . . . that this Court assume evidence exists which would establish the falsity
of the specific statements made by [Butterfield] which are detailed herein." Essentially, the State asks this
Court to assume that Butterfield is guilty of the alleged perjury before he has even been tried. This is
counter to the well-established legal presumptions that sworn testimony is presumed to be true and that an
accused is innocent until proven guilty.

 Additionally, the cases the State cites to support its position are distinguishable. In the bulk
of cited cases, the witnesses never invoked their Fifth Amendment rights; rather, they chose to testify falsely
in grand jury proceedings or file false affidavits or tax forms. See United States v. Wong, 431 U.S. 174
(1977) (false statements given in grand jury testimony could be basis for perjury); United States v.
Mandujano, 425 U.S. 564 (1976) (witness who chooses to commit perjury instead of invoking Fifth
Amendment can be prosecuted for perjury); Bryson v. United States, 396 U.S. 64 (1969) (defendant
should have availed himself of legal method for challenging affidavit requirement instead of choosing to
include falsehoods in affidavit); United States v. Knox, 396 U.S. 77 (1969) (defendant sh