# United States Court of Appeals
## For the First Circuit

No. 02-2276
No. 02-2311

UNITED STATES OF AMERICA,

Appellee/Cross-Appellant,

v.

ANTHONY BOVA,

Defendant, Appellant/Cross-Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker,* U.S. District Judge]

Before

Boudin, Chief Judge,

Cyr, Senior Circuit Judge,

and Lynch, Circuit Judge.

Syrie D. Fried, Federal Defender Office, for defendant.
Cynthia A. Young, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief for the
United States.

November 25, 2003

---

*Of the Southern District of New York, sitting by designation.

**BOUDIN**, <u>**Chief Judge**</u>.  Anthony Bova, convicted in the district court for lying in the course of court testimony in an earlier matter, now appeals.  He claims that his perjury grew out of a violation of his right to counsel; the government cross appeals on a sentencing issue.  We describe briefly the background events and prior proceedings, reserving further detail for discussion of the two quite different claims on appeal.

Well before the events that gave rise to this case, Bova was convicted in February 1993 in federal court in Nevada for a conspiracy involving the possession of stolen credit cards, served a term in prison, and was on supervised release in Massachusetts in early 1995.  On September 1, 1995, he was arrested for an asserted supervised release violation (an alleged stabbing).  While in custody on that charge, he was accused of beating a fellow prisoner, Paul Hurley, on November 6, 1995.

A district judge found the initial stabbing charge not proven and Bova was set free on February 9, 1996, still on supervised release.  Three days later, on February 12, 1996, Bova allegedly used a knife to assault one Walter Tauro in Somerville, Massachusetts.  Bova was then re-arrested for violating supervised release conditions and brought before a magistrate judge on March 15, 1996, for a hearing on bail.  Bova initially sought to represent himself but was persuaded to accept appointed counsel and the hearing was adjourned.

The following Monday, March 18, 1996, the hearing resumed. Although Bova faced charges that could end his supervised release, the sole question at the resumed hearing was whether Bova should be released on bail or detained (as the government sought) pending resolution of the new charges. Bova now sought to represent himself with his new attorney acting as standby counsel; the magistrate judge said that he would not approve this option and that Bova must have counsel or simply represent himself. Saying that he was better prepared than his counsel, Bova insisted upon representing himself.

In the hearing, Bova cross-examined the government's witness, Probation Officer John Perry, and then testified on his own behalf, denying that he had assaulted either Hurley or Tauro. The magistrate judge ended by finding probable cause to believe that Bova had committed both assaults and detained him as a danger to the community. Later, the district court found Bova responsible for both assaults, as well as a third assault on a guard committed on February 15, 1996, and sentenced him for violating his supervised release conditions.[1]

---

[1] In July and August 1999, Bova was given concurrent six-month sentences in state court after pleading guilty to assaulting and threatening to kill Tauro and entering an Alford plea to the charge of assault and battery on Hurley. See North Carolina v. Alford, 400 U.S. 25 (1970).

On March 15, 2001, a federal grand jury indicted Bova for two counts of perjury, 18 U.S.C. § 1623 (2000), and one of obstruction of justice, 18 U.S.C. § 1503 (2000), based on his testimony at the March 18, 1996, bail hearing. The perjury counts were based on his denials under oath that he had assaulted Hurley and Tauro; the obstruction charge related to the threatened effect of these lies on the proceeding. After the district court declined to suppress the perjurious statements, United States v. Bova, 170 F. Supp. 2d 96 (D. Mass. 2001), Bova entered a conditional plea of guilty to all counts, reserving the right to appeal on the suppression issue. He was thereafter sentenced to 30 months imprisonment. This appeal by Bova followed; the government cross appealed as to the sentence.

We begin with the suppression issue. Bova claims that he was denied his right to counsel under the Sixth Amendment by the magistrate judge; that this caused his false statements in the bail hearing; and that the proper remedy is the suppression of those false statements, thus effectively barring the case against him. It is highly unlikely that Bova has a valid Sixth Amendment claim, but it is even plainer that any supposed violation in the context of this case would not warrant suppression.

Although Bova declines to elaborate on his theory of a Sixth Amendment violation, we think it well to lay to rest any suggestion that Bova had a right to represent himself and to enjoy

-4-

the benefit of standby appointed counsel.  See McKaskle v. Wiggins, 465 U.S. 168, 183 (1984).  True, courts often appoint standby counsel for a defendant who insists on self-representation–-partly in the hope that proceedings will flow more smoothly--but no case suggesting that the defendant has a constitutional right to represent himself and enjoy appointed counsel has been called to our attention.

One circuit has clearly stated that no right to standby counsel exists.  McQueen v. Blackburn, 755 F.2d 1174, 1178 (5th Cir. 1985), cert. denied, 474 U.S. 852 (1985).  Language from an earlier decision in this circuit points in the same direction.  See United States v. Betancourt-Arretuche, 933 F.2d 89, 95 (1st Cir. 1991), cert. denied, 502 U.S. 959 (1991).  "Although appellate courts have suggested that appointment of standby counsel is to be preferred, it is not constitutionally required."  3 Lafave, Criminal Procedure, § 11.5(f), at 589 (2d ed. 1999).

Bova's better argument, and seemingly the one he has in mind, is a fact-specific claim that Bova was forced to represent himself because the magistrate judge supposedly confronted Bova with an unfair choice between self-representation and the assistance of a counsel who had not been given adequate time to prepare.  In lengthy dialogue we have omitted (because we do not plan to decide this "unfair choice" question), Bova and his initially-appointed counsel said at the March 18, 1996, hearing

-5-

that they had spoken together only for an hour before the court session because counsel had not been able to meet with Bova over the intervening weekend.

Why the magistrate judge did not volunteer that Bova and his counsel could have more time to confer is a mystery; but neither Bova nor his new counsel asked for additional time and the magistrate judge certainly did not foreclose a request. This is why we are skeptical that there is any Sixth Amendment claim, although it is clear in retrospect (the vantage from which most things are clear) that a postponement of the hearing to allow more time would have been a good practical resolution.

Still, we will assume _arguendo_ that the magistrate judge did make some arguable mistake of constitutional dimension that could be developed on a fuller record (say, by leading Bova to believe that he had to represent himself or be content with inadequately prepared counsel). Even so, on the present facts that would not come close to licensing Bova to take the stand and falsely deny under oath that he had committed two assaults.

The government says that even if there was a Sixth Amendment violation (which it denies), that violation may have "caused" Bova to represent himself but it did not "cause" him to take the stand and tell clear-cut lies about his prior assaults. Causation rhetoric is of some use in focusing upon the different choices with which Bova was faced (whether to represent himself

versus whether to lie). But it does not entirely resolve the legal controversy in favor of the government, as it might if the supposed constitutional violation <u>followed</u> the perjury rather than preceded it.

"Causation" is one of the terms used in the law that is notorious for multiple meanings. Yes, a supposed denial of appointed counsel would not force Bova to lie; but it could certainly be a "but for" cause of his perjury if we suppose--not without some basis--that a competent lawyer who represented Bova in the hearing would almost certainly have persuaded Bova not to take the stand and compound his problems by denying the assaults. In this sense a wrongful denial of counsel to an interrogated suspect is said to have "caused" the confession that followed. <u>Cf</u>. <u>Massiah</u> v. <u>United States</u>, 377 U.S. 201, 207 (1964).

The issue here is not one of "but for" causation but (as with proximate cause) a policy choice as to the legal consequences that judges want to impose upon a fault or flaw. The main policy in this case is that courts very much do not want people to tell deliberate lies on the witness stand and, in general, take the view that defects in the steps that may bring witnesses to the stand are not adequate reason for tolerating the lies and foregoing punishment. A number of Supreme Court decisions reflect this general policy.

-7-

Thus, in Dennis v. United States, 384 U.S. 855 (1966), convictions for filing false non-Communist affidavits were sustained, the Court holding that it did not matter whether the underlying statute that required them violated the First Amendment. Id. at 867; see also Bryson v. United States, 396 U.S. 64, 72 (1969). Similarly, in United States v. Mandujano, 425 U.S. 564, 576, 584 (1976), and United States v. Wong, 431 U.S. 174, 176-78 (1977), the respective failures to give a grand jury witness a Miranda warning (in one case) or a warning as to the privilege against self-incrimination (in the other) were held not to excuse the subsequent perjury of the witness. Other cases are to the same effect.[2]

Admittedly, evidence secured by the police in violation of constitutional rights is often suppressed; the classic cases are Mapp v. Ohio, 367 U.S. 643 (1961) (Fourth Amendment), Miranda v. Arizona, 384 U.S. 436 (1966) (Fifth) and United States v. Massiah, 377 U.S. 201 (1964) (Sixth). But these cases do not immunize later perjury by the defendant even if prompted by unlawfully obtained evidence. Harris v. New York, 401 U.S. 222, 226 (1971) (Miranda

---

[2]E.g., United States v. Olmeda, 839 F.2d 1433, 1437 (11th Cir. 1988) (Sixth Amendment violations in securing grand jury testimony cannot be used to suppress perjurious testimony in a later perjury prosecution); United States v. Winter, 348 F.2d 204, 208 (2d Cir. 1965), cert. denied, 460 U.S. 1011 (1983) (same). Cf. United States v. Masters, 484 F.2d 1251, 1253-54 (10th Cir. 1973) (lack of counsel at an evidentiary hearing part of a habeas corpus proceeding does not excuse perjury.)

violation "cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances"); United States v. Finucan, 708 F.2d 838, 845 (1st. Cir. 1983) (unlawful search and seizure cannot be used to suppress the perjurious statement stemming from it).   Bova's remedy, if he thought that his right to counsel was being denied, was to avoid perjury from the denial of bail.

Bova relies upon United States v. Doss, 545 F.2d 548 (6th Cir. 1976), where the prosecutor summoned a target before the grand jury and did not tell him that he was already the subject of two indictments.   Later the defendant was indicted for perjury for a false response to a grand jury question relevant to the crimes for which he had already been secretly indicted.   Id. at 549.   The Sixth Circuit viewed this as tantamount to questioning an indicted defendant about his charged offenses outside the presence of his counsel and, describing this as a Sixth Amendment violation, barred the perjury prosecution.   Id. at 552.

The Sixth Circuit said in substance that the asserted Sixth Amendment violation rendered the grand jury proceeding "void", id. at 552, which is (at best) a conclusory epithet burying a debatable policy judgment.   Admittedly, Doss is not the only case in which misconduct by the prosecutor has prompted a court to bar a prosecution for the ensuing perjury.   See Brown v. United States, 345 F.2d 549, 554-56 (9th Cir. 1957).   Yet other courts, including

this one, have been reluctant to excuse grand jury or other perjury on the ground that it was prompted by misconduct of the prosecutor.[3] Here, of course, we are not concerned with any such misconduct.

Perhaps in some extreme situation a prosecutor's interference with the right to counsel might seem so egregious and functionally related to the perjury as to provide an arguable case for such a sanction. But rules designed to deprive the police or the prosecutor of incentives to misbehave make little sense where we are dealing with the putative error of a judicial officer who has no such incentives. See United States v. Leon, 468 U.S. 897, 916-17 (1984). The naked perjury in this case provides no encouragement to plough new ground.

We turn next to the government's cross appeal contesting the district court's calculation of the sentence. The guidelines provide that simple perjury has a base offense level of 12. U.S.S.G. § 2J1.3(a) (2001).[4] Although Bova had lied in the bail

---

[3]E.g., United States v. Babb, 807 F.2d 272, 279 (1st Cir. 1986); United States v. Weiss, 752 F.2d 777, 785-86 (2d Cir. 1985), cert. denied, 474 U.S. 944 (1985); United States v. Crocker, 568 F.2d 1049, 1053-55 (3d Cir. 1977); United States v. Williams, 874 F.2d 968, 973-75 (5th Cir. 1989).

[4]The practice is to use the guidelines in effect at the time of sentencing, not those in effect when the crime was committed, as long as there are no ex post facto concerns. United States v. Aymelek, 926 F.2d 64, 66 n.1 (1st Cir. 1991). Here, there are no such concerns because the two versions of the sentencing guidelines are identical for the provisions relevant in this appeal. We therefore refer to the 2001 guidelines, the guidelines in effect at

hearing as to two different prior assaults, counts are grouped--and only the higher offense level considered--where the counts involve "the same victim" and the same acts or transactions linked by a common plan. U.S.S.G. § 3D1.2.

Here, the district court treated the two lies as directed to a single "victim" (the United States) and part of a single effort by Bova to get bail and avoid revocation of his supervised release status; reduced the resulting combined offense level of 12 by 2 levels for acceptance of responsibility; and refused the government's request for an upward departure. The resulting offense level of 10, coupled with Bova's criminal history, produced a guideline range of 23 to 30 months and the district court imposed the 30 month maximum, to be served concurrently with a 30 month sentence for obstruction of justice.

On this appeal, the government says that the district court should have followed the probation officer's calculation and applied the cross reference in the perjury guideline which provides as follows:

> (c) Cross Reference
> (1) If the offense involved perjury, subornation of perjury, or witness bribery in respect to a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above.

U.S.S.G. § 2J1.3(c).

---

the time Bova was sentenced.

A rough translation of this language is that where the cross reference applies, the perjurer is sentenced as if he were an accessory after the fact to the substantive criminal offense or offenses about which he has lied. See United States v. Suleiman, 208 F.3d 32, 38-39 (2d Cir. 2000). This makes sense where, for example, the perjurer testifies at the trial of a confederate, falsely asserting that the confederate did not commit the underlying crime; but the cross reference's language is not limited to such a case.

Here, application of the cross reference would have had two dramatic effects on Bova's sentence. First, Bova's lies related to two assaults, each fairly described as at least an aggravated assault, and the guidelines treat such assaults as having a base offense level of 15, subject to further specific offense adjustments (e.g., for harm caused and weapons used) that can boost the levels further. U.S.S.G. § 2A2.2. The probation officer calculated that the adjusted level would be 20 for the Tauro assault and 25 for the Hurley assault (which the government corrects to 24).

Second, under the grouping rules for multiple counts, assaults cannot be treated as closely related counts. U.S.S.G. § 3D1.2(d). This does not mean that the separate offense levels for each are added together but it does mean that they are combined so that the combined offense level is often higher than the single

highest count, U.S.S.G. § 3D1.4; in this case the probation officer computed a combined offense level of 26. Since an accessory after the fact is sentenced at 6 levels less than the perpetrator, U.S.S.G. § 2X3.1, this would give Bova an offense level of 20 or, after acceptance of responsibility, 18, U.S.S.G. § 3E1.1.

This approach would have given Bova a much higher guideline range and the government asserts that this approach was dictated by the cross reference. The government concedes that direct precedent is scarce but says that the cross reference language--"in respect to a criminal offense"--is broad and applies here because here the perjury was <u>about</u> the assaults. In truth, phrases like "in respect to" or "in connection with" are highly elastic and any sensible construction invites inquiry into what the drafter was trying to accomplish. <u>See</u> <u>United States</u> v. <u>Conley</u>, 186 F.3d 7, 25 (1st Cir. 1999), <u>cert. denied</u>, 529 U.S. 1017 (2000).

The cross reference is based on the potential of the perjury to derail or miscarry a judicial or similar proceeding directed to another crime. <u>Suleiman</u>, 208 F.3d at 39. Where the other crime is substantially more serious than generic (offense level 12) perjury, the guideline drafters obviously thought that the guideline sentence for that crime better reflected the gravity of the perjury itself, subject to a discount to reflect the fact that the perjurer was an accessory after the fact rather than a perpetrator. This explains why the cross reference applies only to

-13-

raise the offense level above 12 and also explains the 6 level reduction from the cross-referenced crime's offense level.

This purpose is not a narrow one: it seemingly applies wherever the perjury is directed to the investigation or trial of a criminal offense even where common-law accessory doctrine would normally not apply. Consider the case of perjury in a criminal trial to <u>inculpate</u> an innocent third party rather than to exculpate a confederate. Still, as the Second Circuit stated, "the purpose of the 'in respect to' enhancement is to treat more severely perjuries that risk an incomplete or an inaccurate investigation or trial of a criminal offense." <u>Suleiman</u>, 208 F.3d at 39.

In this case, the perjury occurred in a bail hearing in an overall proceeding designed to determine whether Bova's supervised release should be revoked. The government has not argued that such a bail hearing is, or is part of, a proceeding to adjudicate a criminal offense; if it were, perjury at the hearing would be "in respect to a criminal offense" and the cross reference would arguably apply. But whether or not such an argument could be made, it was not made in the district court nor is it pressed in this court.

Rather, the government says in substance that the cross reference applies simply because the perjury was <u>about</u> a criminal offense, namely, the assaults. But it misses the point to make the subject matter of the perjury, rather than its connection to the

-14-

prosecution of a criminal offense, the decisive consideration. A material lie about any subject in a criminal trial could sensibly trigger the cross reference; a lie in a civil or other non-criminal proceeding about a criminal act, at least if not a direct threat to a criminal trial or investigation, deserves no more punishment than a lie about a non-criminal act.

The government has a long and exceedingly complicated discussion of the legislative history of the perjury guideline, an associated obstruction of justice guideline, and a specific offense characteristic in the perjury guideline providing for a fixed 3-level increase if the perjury "resulted in substantial interference with the administration of justice . . . ." U.S.S.G. § 2J1.3(b)(2). The discussion is almost beyond summary and it is enough to say that this winding and intricate history takes us nowhere solid.

As it happens, the specific offense characteristic just mentioned—essentially for obstructing justice—comes much closer to a suitable adjustment for Bova's lies. His lies had little potential to interfere with prosecution of the crimes lied about which is why their seriousness is not a suitable measure of Bova's perjury; but they did have a capacity to obstruct the bail hearing and so came pretty close to warranting an adjustment for obstructing that proceeding.

Presumably such an enhancement was not sought because the obstruction adjustment is more narrowly framed than the counterpart

-15-

criminal offense of obstruction of justice.  While the obstruction statute applies to one who "endeavors" to obstruct court proceedings, 18 U.S.C. § 1503(a)(2000), the specific offense adjustment in the perjury guideline applies only to perjury that "resulted" in a "substantial interference" with the proceeding, U.S.S.G. § 2J1.3(b)(2).  The government may have thought that lies so quickly brushed aside by the magistrate judge had no such effect.

The judgment and sentence of the district court are both <u>affirmed</u>.