[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 25, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13375

_____

D. C. Docket No. 04-00212-CR-CB

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

CLAUDINA BENITEZ,
a.k.a. Claudina Campo,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(August 25, 2006)**

Before HULL and WILSON, Circuit Judges, and DUPLANTIER,* District Judge.

_____

*Honorable Adrian G. Duplantier, United States District Judge for the Eastern District of Louisiana, sitting by designation.

WILSON, Circuit Judge:

This case involves the interpretation of the United States Sentencing Guidelines Manual, Section 2J1.3(c), which deals with sentencing for perjury committed "in respect to" a criminal offense. The Government appeals Claudina Benitez's sentence, arguing that the district court misapplied the Guidelines. The Government argues that Benitez's perjury was "in respect to" her sister's drug conspiracy trial. Benitez argues that the perjury was "in respect to" her sister's failure to appear for the drug conspiracy trial. The district court agreed with Benitez, adopted the probation officer's presentence investigation report ("PSI"), and sentenced Benitez to a year and a day followed by three-years supervised release. Because Benitez admitted in her plea that she made material lies about a matter before the court, and because the matter before the court was the drug conspiracy trial, we find that the perjury was "in respect to" the drug conspiracy.

## I. BACKGROUND

Benitez's sister, Maria Garcia, was charged with conspiracy to distribute 100 kilograms of cocaine. Garcia was released on the condition that she attend the trial with Benitez acting as third party custodian. Both Garcia and Benitez traveled by bus from Houston, Texas to Mobile, Alabama for the trial. They also attended the first day of trial together, although Benitez was excluded from the courtroom

2

because she was to testify at the trial.

The night before the trial's second day, Garcia fled from Mobile to Houston via a taxi cab. Benitez, when questioned the next day about Garcia's whereabouts, stated that she did not know where Garcia was. She made these statements under oath to the judge before trial commenced that morning and again later in both her direct and cross examination, while testifying as a Government witness. The trial continued in Garcia's absence because the trial judge determined from Benitez's statements that Garcia left voluntarily. Before testifying about Garcia's whereabouts as a Government witness, Benitez testified truthfully for the defense about issues having a direct bearing on the drug conspiracy offense.

Garcia was later arrested in Houston. When the authorities interviewed the taxi cab driver who drove Garcia from Mobile to Houston, he identified Benitez as helping Garcia negotiate the Houston fare the night that Garcia fled Mobile. A grand jury later indicted Benitez on five counts: perjury (Counts 1-3), aiding and abetting failure to appear (Count 4), and accessory after the fact (Count 5), in violation of 18 U.S.C. §§ 1623(a), 3146(a), 2, and 3, respectively. Benitez pled guilty to all of the charges.

At sentencing, the counts were grouped together in the PSI because they involved "two or more acts or transactions connected by a common criminal

3

objective or constituting part of a common scheme or plan." U.S. Sentencing Guidelines Manual § 3D1.2(b) (2004). The PSI noted that, pursuant to § 3D1.3(a), the offense level applicable to the group was the offense level for the most serious of the grouped counts, or in other words, the count which provided for the highest offense level. Count 4 (aiding and abetting failure to appear) yielded the highest offense level of the counts in the group and was used for the group's offense level. After making the appropriate adjustments, the total offense level was 13, which yielded a sentencing range of 12-18 months after accounting for Benitez's Category I criminal history.

The Government objected to the offense level calculation arguing that the perjury counts yielded the highest offense level. The Government argued that the perjury occurred "in respect to" the underlying drug conspiracy trial, not Garcia's failure to appear. It reasoned that although the perjury concerned the failure to appear, Benitez's sworn denial of prior knowledge of Garcia's flight made her a more credible witness and thus bolstered her testimony that directly related to Garcia's drug conspiracy offense. According to the Government, the correct offense level should have been 28 which would have yielded a sentence ranging from 78 to 97 months after accounting for her criminal history.

The district court rejected the Government's arguments and found that

Benitez's denial of knowledge about her sister's flight did not enhance her credibility. The district court also found that, except for the testimony about the flight, Benitez's testimony was true and that false testimony about flight could not have led to a miscarriage of justice.

## II. STANDARDS OF REVIEW

We review de novo the sentencing court's choice of the appropriate guideline to apply to a factual scenario and its legal conclusions interpreting the Guidelines. *See United States v. Miranda*, 348 F.3d 1322, 1330 (11th Cir. 2003) (per curiam). "We review the district court's findings of fact in sentencing for clear error." *United States v. DeVegter*, 439 F.3d 1299, 1303 (11th Cir. 2006).

## III. DISCUSSION

Section 2J1.3 of the Guidelines gives the base offense level for perjury. "If the offense involved perjury, subornation of perjury, or witness bribery in respect to a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined [otherwise under § 2J1.3]." U.S. Sentencing Guidelines Manual § 2J1.3(c) (2004). According to § 2X3.1(a)(1), the base offense level is "6 levels lower than the offense level for the underlying offense." "For purposes of this guideline, 'underlying offense' means the offense as to which the defendant is convicted of

being an accessory . . . ." *Id.* § 2X3.1 cmt. n.1 (2004). For the purpose of determining the appropriate offense level for perjury, the Government argues that the underlying offense was the drug conspiracy and further argues that the perjury was "in respect to" the drug conspiracy trial.

Although there are no Eleventh Circuit cases interpreting the phrase "in respect to a crime," other circuits have examined the phrase. *See United States v. Bova*, 350 F.3d 224 (1st Cir. 2003); *United States v. Suleiman*, 208 F.3d 32 (2d Cir. 2000). Although these cases are factually distinguishable from the present case, their statements on the Sentencing Commission's policy and intent are instructive.

In *Bova*, the defendant lied during a bail hearing about two assaults for which he was trying to secure bail. 350 F.3d at 226. The issue was whether the perjury was in respect to the assaults. The bail hearing was a proceeding to determine whether supervised release should be revoked. *Id*. at 230-31. The decisive consideration for the court was the connection of the perjury to the prosecution of a criminal offense. *Id.* at 230-31. The court concluded, "[t]he cross reference is based on the potential to derail or miscarry a judicial or similar proceeding directed to another crime . . . . [The defendant's] lies had little potential to interfere with prosecution of the crimes lied about which is why their

6

seriousness is not a suitable measure of Bova's perjury . . . ." *Id.* at 230-31.

In *Suleiman*, the defendant lied during a grand jury investigation about associating with individuals involved in the 1993 World Trade Center bombing. 208 F.3d at 34-35.  The district court did not apply § 2J1.3's cross reference, because the case was one "where neither the questions asked nor the answers given referenced any criminal offense." *Id.* at 36 (internal quotations and citations omitted).  Disagreeing with the district court, the Second Circuit held, "The purpose of the 'in respect to' enhancement is to treat more severely perjuries that risk an incomplete or an inaccurate investigation or trial of a criminal offense." *Id.* at 39 (internal citations omitted).  *Suleiman* dealt with perjury before a grand jury, which the Second Circuit concluded "will almost always merit enhanced punishment" because of a grand jury's broad investigatory scope.  *Id.*

The Sentencing Commission has taken a similar approach in likening perjury to obstruction of justice.  "The Commission believes that perjury should be treated similarly to obstruction of justice.  Therefore, the same considerations for enhancing a sentence are applied in the specific offense characteristics, and an alternative reference to the guideline for accessory after the fact [§ 2X3.1] is made."  U.S. Sentencing Guidelines Manual § 2J1.3 cmt. Background (2004).

We hold in this case that for perjury to be "in respect to" the drug

conspiracy, the perjury would have to have had the potential to disrupt the government's investigation or prosecution of that crime. Benitez's perjury had this potential. For a false statement given under oath in a court proceeding to rise to the level of perjury, it must be a "material" statement. 18 U.S.C. § 1623(a). A false statement is material if "it was capable of influencing the tribunal on the issue before it." *United States v. Roberts*, 308 F.3d 1147, 1155 (11th Cir. 2002) (per curiam); *Blackmon v. United States*, 108 F.2d 572, 573-74 (5th Cir. 1940).

At first glance it is difficult to see how Benitez's false statements could have "influenced the tribunal on the issue before it," (namely, the issue of Garcia's guilt).[1] Benitez only testified falsely on the issue of her own participation in aiding her sister's flight–Benitez testified truthfully in all other matters. Telling the truth would not have significantly lessened her credibility because (1) the jury already knew that Benitez had failed her duty as a third-party custodian; (2) Benitez would have been more credible if she had told the truth; (3) Benitez lied to protect herself, not to prevent Garcia from being punished; (4) Benitez testified truthfully on behalf of Garcia about matters related to the drug conspiracy and about the voluntariness of Garcia's flight; and (5) the government was able to use Benitez's testimony about Garcia's disappearance as affirmative evidence of Garcia's guilt.

---

[1]Indeed, the district court based its holding on the idea that the perjury did not impact the drug conspiracy trial because it did not lessen Benitez's credibility.

8

Furthermore, the trial proceeded in Garcia's absence, and the government was able to use her flight as further evidence of guilt.

Despite the difficulty of discerning the perjury's impact on Garcia's trial, such an analysis basically goes to whether or not the statements were material to the drug conspiracy trial and is thus unnecessary because Benitez has pled guilty to perjury. In so doing, Benitez has legally acknowledged that her false statements influenced the district court on some matter before the court. The only matter before the court during Garcia's trial was whether Garcia was guilty of drug conspiracy. Therefore, because we are bound by Benitez's concession of her statements' material effect on the drug conspiracy trial, we must hold that her perjury was "in respect to" the drug conspiracy. To hold otherwise and say that her statements did not have a material affect on the drug conspiracy trial would be to hold that the statements were not perjurious at all.[2]

---

[2]We note that our holding is consistent with *United States v. Bova*, 350 F.3d 224 (1st Cir. 2003). In *Bova*, the perjurious statements were not given in the trial itself but at the bail hearing. *Id*. at 226. Therefore, they were material to the bail hearing rather than the trial. Accordingly, the First Circuit held that the perjury was not in respect to the underlying assaults. *Id*. at 230-31. In the instant case, the perjury was given in the criminal trial itself, and is therefore material to that trial, which existed to determine Garcia's guilt or innocence.

Our holding is also consistent with *United States v. Leon-Reyes*, 177 F.3d 816, 824 (9th Cir. 1999) (testimony regarding legitimate source of business at trial for money laundering and drug trafficking might have benefitted the defense to drug trafficking but would only have had a significant effect on the money laundering and was therefore only "in respect to" the money laundering). In *Leyon-Reyes*, the perjury was only material to one of the charges in a trial of multiple, discrete charges. In the instant case, the statement was material to the underlying proceeding which was solely determining Garcia's guilt of drug conspiracy.

We therefore vacate Benitez's sentence and remand for re-sentencing. In so doing, we note that we merely hold that the district court did not properly calculate Benitez's sentence under the Guidelines. The district court is free to give any reasonable sentence on remand as long as it considers the Guidelines' recommendation and the other factors set forth in 18 U.S.C. § 3553(a).

**VACATED AND REMANDED.**

HULL, Circuit Judge, specially concurring:

I concur only in the judgment reversing the district court, vacating Benitez's sentence, and remanding for resentencing. My reasons are as follows.

Benitez, the perjury defendant here, is the sister of Garcia, who was tried and convicted for her role in a drug conspiracy. Benitez testified for the defense in Garcia's drug-conspiracy trial about issues having a direct bearing on the charged drug-conspiracy offense. Garcia was accused of having traveled to Mobile, Alabama, with her husband, Jose Nieves, to pick up a load of cocaine. Garcia's knowledge of and participation in the drug conspiracy were at issue in the criminal trial. Benitez's testimony undermined the government's theory that certain travels, contacts, and money deposits by Garcia and her family were suspicious.

For example, Benitez identified certain names and addresses that emerged in the evidence, and her testimony suggested innocent explanations – including

10

ordinary contact and visits with family members – for much of the travel and contact that the government viewed as suspicious. Benitez also denied knowing an indicted co-conspirator and several alleged drug contacts in New York and denied knowing how her niece, Maria Giraldo, came to possess $51,000 in cash in August 2001.[1] In addition, Benitez identified the black Isuzu Montero in which Garcia was arrested as Garcia and Nieves's car, but testified that Nieves drove the Isuzu all the time. Benitez's testimony related to her sister's relationship to people, places, and events associated with the cocaine conspiracy and thus was highly relevant to her sister's knowledge of and involvement in the charged cocaine conspiracy.

During the same criminal trial, Benitez also testified about her sister's flight from trial, and in so doing, perjured herself by denying her own involvement in her sister's flight. Benitez told the jury that she had no part in her sister's disappearance, when in fact she was complicit in it. Had the jurors known of Benitez's complicity in her sister's absconding during the trial, they might well have concluded that Benitez would do other unlawful things – including testifying untruthfully – to protect her sister, and Benitez's credibility would have been undermined, if not eviscerated. Because Benitez's perjury in her sister's trial

---

[1]Giraldo apparently was identified as having made a money drop around that time.

11

protected her own credibility in testifying about matters relevant to the drug-conspiracy charge against her sister, the perjury easily could have affected the outcome of the trial. Benitez parses her testimony too finely in arguing that her perjury about her sister's fleeing her drug-conspiracy trial is about only a collateral matter of flight and not related to her drug-conspiracy trial. My view is that Benitez's distancing herself from her sister's flight, and especially not telling the jury she had helped her sister flee during the actual trial itself, was crucial to give her other testimony credibility. Thus, in my view, a plain reading of U.S.S.G. § 2J1.3(c) compels the conclusion that Benitez's perjury was "in respect to" the drug-conspiracy charge against Garcia. See United States v. Bova, 350 F.3d 224, 230 (1st Cir. 2003) ("The [§ 2J1.3] cross reference is based on the potential of the perjury to derail or miscarry a judicial or similar proceeding directed to another crime."); United States v. Suleiman, 208 F.3d 32, 39 (2d Cir. 2000) ("The purpose of the 'in respect to' enhancement is to treat more severely perjuries that risk an incomplete or an inaccurate investigation or trial of a criminal offense.").[2]

---

[2]Because Benitez was a material witness in the drug-conspiracy trial and her perjury had the potential to derail justice in that trial, I need not reach the government's argument that Benitez's perjury was also "in respect to" the drug-conspiracy charge because it enabled Garcia to avoid capture for those charges. Although the trial against Garcia proceeded in her absence, Benitez's perjury possibly allowed Garcia to escape justice longer than she otherwise would have, and could have allowed her to escape indefinitely. Thus, the government argues, Benitez's perjury risked a miscarriage of justice in allowing Garcia to elude justice "in respect to" the drug-conspiracy charge.

12

Nor do the cases relied upon by Benitez suggest otherwise, as they involve perjury in separate proceedings and not in the actual trial of the other crime itself. The only case cited by Benitez that involves perjury in a criminal trial is United States v. Leon-Reyes, 177 F.3d 816 (9th Cir. 1999). Leon-Reyes is easily distinguished from Benitez's case. Defendant Leon-Reyes, an accountant, testified perjuriously in a criminal trial in which Heriberto Garcia Sr. and Heriberto Garcia Jr. were charged with drug trafficking, money laundering, and money structuring. Id. at 818-19. Leon-Reyes testified about the financial affairs of Garcia Sr. in relation to the money-laundering charges and did not testify about the Garcias' drug activities. Id. at 824. As a result, the Ninth Circuit concluded that Leon-Reyes's perjury was "in respect to" the money-laundering charges but not the drug-trafficking charges. Id. Here, Benitez's testimony was clearly material to the drug-conspiracy charge against Garcia. Thus, Leon-Reyes does not support Benitez's position.

For these reasons, I conclude that Benitez's perjury in her sister's drug-conspiracy trial was "in respect to" that drug-conspiracy offense and thus concur in the judgment vacating Benitez's sentence and remanding for resentencing.

13