NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 19, 2016
Decided January 20, 2016

**Before**

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-1172

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     *Plaintiff-Appellee*, <br><br> *v.* <br><br> RICK BOROS, <br>     *Defendant-Appellant*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 12 CR 198-1 <br><br> Charles R. Norgle, <br> *Judge*. |

**O R D E R**

After a jury trial at which he represented himself, Rick Boros was convicted of three counts of wire fraud and eight counts of money laundering. *See* 18 U.S.C. §§ 1343, 1957(a). The jury also found that Boros had committed wire fraud while on bond awaiting trial on federal drug charges. *See id.* § 3147; *United States v. Boros*, 668 F.3d 901 (7th Cir. 2012). He was sentenced to a total of 108 months' imprisonment followed by three years' supervised release. Boros filed a notice of appeal, but the lawyer appointed to represent him in this court has concluded that the appeal is frivolous and seeks to withdraw. *See Anders v. California*, 386 U.S. 738, 744 (1967). Boros opposes this motion. *See* CIR. R. 51(b). Counsel's brief explains the nature of the case and addresses the

potential issues that a case of this kind might be expected to involve. Because counsel's analysis appears to be thorough, we limit our review to the points he discusses along with the additional contentions presented by Boros. *See United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014); *United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996).

Timothy Collins, a minister and the executive director of a religious nonprofit called AACCTTSS, contacted Boros in 2008 after reading online that he was a financier who helped charities raise funds. Boros told Collins that he worked for an organization affiliated with the Catholic Church, and that he also was a licensed securities dealer whose trades were overseen by the Federal Reserve and the International Monetary Fund. He pitched a scheme to raise money for AACCTTSS: If Collins could come up with $2 million, Boros could acquire a $100 million line of credit from a Colombian bank, make trades, and after 40 weeks return to Collins a profit of 40 to 60 percent.

Collins believed Boros and persuaded an acquaintance to donate $100,000 toward the $2 million buy-in. Boros directed Collins to wire that money to an account in the name of Davis Enterprises, purportedly a company owned by a wealthy businessman, William Davis, who would guarantee Collins's principal. Boros also said that Triad Global Holdings, which he described as his own company, would absorb any losses, and he sent a purported guarantee to Collins.

Collins could not raise the remaining $1.9 million. Boros said his company would cover $900,000 if Collins could find $1 million. Collins approached the two owners of 1410 Investments, a real estate investment company, who participated in a conference call with Boros, Collins, and others. Boros persuaded the men to wire $1 million from 1410 Investments to the Davis Enterprises account.

Boros had promised to acquire the line of credit within 7 days of receiving the funds from 1410 Investments, and when that date came and went, Boros answered Collins's inquiries with a written proposal to extend the deadline by 7 days. That proposal arrived with Collins's signature already affixed, along with a signature for Francis Woodcock, the "Chief Executive, Administration and Philanthropy Man" for Boros's purported employer. After the new deadline passed without any sign that the line of credit had been acquired, Collins demanded proof from Boros that the deal was in place. He received a letter bearing the signature "James Morris," who was represented to be the chief legal officer of Triad Global Holdings, confirming that AACCTTSS was investing with Triad. Boros also contacted Collins by e-mail assuring him that "everything is in."

Collins, now suspicious, organized and recorded a conference call between himself, Boros, and the three men who provided the $1.1 million. Boros insisted that their funds were safe in the bank, but when Collins and the principals of 1410 Investments contacted William Davis for confirmation, Davis brushed them off and said to call Boros instead. The fraud department of the bank told Collins that the Davis Enterprises account had been closed, and the organization that purportedly employed Boros denied that he worked there or that Francis Woodcock had signed the document extending the time to acquire the line of credit. After Collins and the others demanded the return of the $1.1 million, Boros said that Collins should communicate from then on with Davis's attorney, to whom the money had been transferred. That lawyer told Collins, however, that he represented Boros, not Davis. No money ever was returned, and finally Collins alerted the FBI.

After Boros was indicted, his first appointed lawyer was permitted to withdraw and replaced by Yelena Dolgosheeva. Boros later elected to represent himself. Dolgosheeva initially remained as standby counsel but later was released from that limited appointment after Boros accused her of colluding with the prosecution. She was not replaced for trial.[1]

Before trial Boros was confined at the county jail in Kankakee, Illinois, but he asked to be moved to the Metropolitan Correctional Center in Chicago in order to better prepare his case. Among other advantages, he said, the federal facility has a better law library. The district court ordered that Boros be moved to Chicago for trial. Boros also requested that an investigator and forensic accountant be appointed to help him interview witnesses and interpret financial documents, but this request was denied.

At trial Collins and one of the owners of 1410 Investments testified about their interactions with Boros and the steps they took after suspecting that they had been swindled. William Davis—who, like Collins, had received immunity—testified about the bank account where the $1.1 million had been wired. Davis had given Boros access to that account, had opened other Davis Enterprises accounts at Boros's direction, and had made withdrawals from those accounts when directed by Boros. The prosecution also called several witnesses who had received checks drawn on Davis Enterprises accounts in payment of debts owed by Boros, including rent, employees' pay, and legal fees.

---

[1] Boros filed a notice of appeal from this decision, but we dismissed the appeal for lack of appellate jurisdiction because he had not yet been sentenced. *United States v. Boros*, No. 14-2718 (7th Cir. Oct. 14, 2014).

Boros's wife also admitted that money had been wired to her from a Davis Enterprises account, and a bank employee testified about additional transfers to accounts in San Francisco, Seattle, Sierra Leone, Hong Kong, and Canada. James Morris, who was one of Boros's partners in Triad Global Holdings, testified that Boros had been removed from the company before his dealings with Collins began. Morris insisted, as did the other partner, that Triad had no involvement in Boros's fraud and that the "James Morris" signature and any other signatures purportedly tied to Triad were forged. Francis Woodcock similarly testified that he had never worked with Boros and that his signature on the document sent to Collins had been forged. Finally, an expert from the Federal Reserve Bank of New York testified that language in the documents that Boros had sent to Collins and the three investors matched that seen in previous frauds aimed at humanitarian organizations. Boros did not testify or call other witnesses.

After the jury verdicts Boros twice filed motions for acquittal or for a new trial citing Federal Rules of Criminal Procedure 29 and 33. The district court denied both motions but assigned new standby counsel for sentencing (who continues to represent Boros on appeal). The court calculated a guidelines imprisonment range of 135 to 168 months but imposed only 108 months because of Boros's age—he was 70 at the time—and declining health that necessitated the use of a wheelchair. The court ran that term concurrently with the sentence Boros already was serving.

In his *Anders* submission counsel evaluates several possible grounds for appeal, and we begin with his discussion about the district court's refusal to replace Dolgosheeva with new standby counsel after her appointment had ended. Counsel concludes that a challenge to the ruling would be frivolous, but Boros insists, in his Rule 51(b) response, that the lack of standby counsel, coupled with the limited legal resources available at the jail in Kankakee, prevented him from presenting a defense. Yet pro se defendants do not have a right to standby counsel. *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006); *United States v. Beckton*, 740 F.3d 303, 307 (4th Cir. 2014); *United States v. Bova*, 350 F.3d 224, 226–27 (1st Cir. 2003). And neither does a defendant become entitled to a law library by electing to represent himself instead of accepting an appointed lawyer. *United States v. Sykes*, 614 F.3d 303, 311 (7th Cir. 2010); *United States v. Byrd*, 208 F.3d 592, 593 (7th Cir. 2000); *United States v. Chapman*, 954 F.2d 1352, 1362 (7th Cir. 1992).

Counsel also deems frivolous an appellate claim that Boros was entitled to the appointment of an investigator and forensic accountant. In asking for this assistance, Boros asserted that he needed an investigator to interview nine witnesses, none of whom

he named or described, and a forensic accountant to identify and examine records from bank accounts that were not investigated by the government. Boros told the district court that these efforts would develop evidence that he was not "in charge of any bank accounts and did not control them" and that transfers into these accounts were for the benefit of Collins and the principals of 1410 Investments. Previously in dictum we have questioned whether a defendant who chooses to represent himself has any right to investigative assistance. *See United States ex rel. George v. Lane*, 718 F.2d 226, 231 (7th Cir. 1983) (rejecting claim that defendant representing himself has right to law library and noting that "[n]owhere did the *Faretta* Court suggest that the Sixth Amendment right to self-representation implies further rights to materials, facilities, or investigative or educational resources that might aid self-representation" (quoting *United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir. 1982)). But even assuming that Boros might have been entitled to assistance from an investigator or accountant if necessary to present his defense, an argument that the district court abused its discretion by denying funds for that purpose would still be frivolous because Boros did not identify a plausible defense. *See United States v. Winbush*, 580 F.3d 503, 509 (7th Cir. 2009). His fraud crimes were complete when he induced the investors to wire money into the Davis Enterprises account, and the counts of money laundering all specify transactions benefitting Boros or his family. The possibility that some of the $1.1 million found its way back to Collins or the investors he recruited would not undermine Boros's convictions.

Concerning the trial, appellate counsel says that he rejected as frivolous a claim that the district court violated the Confrontation Clause of the Sixth Amendment by limiting Boros's cross-examination of prosecution witnesses, but counsel does not say which witnesses or identify any specific restriction on cross-examination. We understand counsel to mean the four witnesses who, in his motion for a new trial, Boros asserted that he was not allowed to fully cross-examine. When limiting cross-examination does not infringe the Confrontation Clause's "core values" like exposing witness bias—which Boros did not contend in his motion—we review only for abuse of discretion. *United States v. Kielar*, 791 F.3d 733, 743 (7th Cir. 2015). The lines of questioning curtailed by the district court had become repetitious (gambling losses by a partner of Triad Global Holdings and the Federal Reserve expert's familiarity with the religious organization where Boros said he was employed) or were irrelevant (Collins's dispute with the principals of 1410 Investments about his liability for the $1.1 million converted by Boros and communications between the Triad partners). District courts may reasonably limit cross-examination, *United States v. Sanders*, 614 F.3d 341, 344 (7th Cir. 2010), and any argument that the court's limits were unreasonable would be frivolous.

Counsel further questions whether Boros could challenge the denial of his motions under Rules 29 and 33. Other than what we already have discussed, those motions concerned only the sufficiency of the evidence to convict. Relief is available under Rule 29 only if the evidence, viewed in the light most favorable to the government, would not justify a rational trier of fact in finding the elements of the crime charged beyond a reasonable doubt. *See United States v. Rahman*, 805 F.3d 822, 836 (7th Cir. 2015); *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014). Under Rule 33, the question is whether "the verdict is so contrary to the weight of evidence that a new trial is required in the interests of justice." *United States v. Chambers*, 642 F.3d 588, 592 (7th Cir. 2011). Because there was overwhelming evidence of Boros's guilt, any challenge to the sufficiency of the evidence, and therefore any challenge to the denial of Boros's motions on that ground, would be frivolous. In his Rule 51(b) response, Boros attempts to undercut the credibility of Collins and William Davis, but we will not second-guess a jury's credibility assessment. *E.g., United States v. Fuller*, 532 F.3d 656, 662 (7th Cir. 2008).

Counsel finally considers, but rightly rejects as frivolous, a claim that Boros's 108-month prison sentence (below the range of 135 to 168 months) is unreasonably long. A below-range sentence is presumptively reasonable. *Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Martinez*, 650 F.3d 667, 671 (7th Cir. 2011). Counsel has not identified a reason to disturb that presumption, nor can we. The district court considered the relevant sentencing factors in 18 U.S.C. § 3553(a), emphasizing that Boros's age and health supported leniency, *see id.* § 3553(a)(1), but that Boros never accepted responsibility or showed any remorse for his actions, *see id.* § 3553(a)(2)(A).

We conclude by observing that the standard conditions of supervised release in the written judgment include some that we have criticized. *See, e.g., United States v. Kappes*, 782 F.3d 828, 848–51 (7th Cir. 2015); *United States v. Thompson*, 777 F.3d 368, 376–80 (7th Cir. 2015). But neither Boros nor his attorney has identified a potential argument related to these conditions. We thus have no reason to believe that Boros wishes to challenge them. *See United States v. Bryant*, 754 F.3d 443, 447 (7th Cir. 2014). If Boros later finds the conditions problematic, he can seek modification to the extent authorized by 18 U.S.C. § 3583(e)(2).

Counsel's motion to withdraw is GRANTED, and the appeal is DISMISSED.