# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2803

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Linda Quam, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 13, 2004
Filed: May 17, 2004

_____

Before MORRIS SHEPPARD ARNOLD, JOHN R. GIBSON, and RILEY, Circuit
Judges.

_____

RILEY, Circuit Judge.

A jury convicted Linda Quam (Quam) of false declarations before a grand jury and obstruction of justice, in violation of 18 U.S.C. § 1623(a) and § 1503(a) (2000). The district court[1] sentenced Quam to fifteen months imprisonment. Quam appeals. We affirm.

_____

[1]The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

## I.    BACKGROUND

The government subpoenaed Quam to appear before a grand jury to testify about the drug-trafficking activities of Harold Schultz (Schultz), Quam's live-in boyfriend. Before Quam was subpoenaed, a confidential informant made a controlled buy at Schultz's residence, and law enforcement later searched the residence. In the controlled buy, Quam observed the drug transaction and actively participated in the discussions. During the subsequent search, law enforcement discovered 111.5 grams of marijuana, 2.3 grams of methamphetamine, and various items associated with drug trafficking.

At the grand jury proceedings, the Assistant United States Attorney (AUSA) informed Quam she was being granted "informal immunity." The AUSA explained "informal immunity" as follows:

> [AUSA.]  We are here to tell you that you are being granted what's called informal immunity.  What that means what you say here today can't be used against you either directly or indirectly with respect to these drugs charges.  Do you understand that?
>
> [Quam.]  Yes.
>
> [AUSA]  But you did take an oath to tell the truth and if you don't tell the truth or omit information, you could be subject to perjury charges. Do you understand that?
>
> [Quam.]  Yes.

Quam told the grand jury she knew nothing about drugs at Schultz's residence, never observed Schultz selling drugs to others, and never saw Schultz use drugs.

A federal grand jury indicted Quam for false declarations before a grand jury and obstruction of justice. A petit jury convicted Quam of both crimes. Because the

obstruction of justice offense carried the highest penalty, the district court based Quam's sentence on her obstruction of justice conviction. Using United States Sentencing Guidelines (Guidelines) section 2J1.2(c)(1) (2002), the district court applied Guidelines section 2X3.1 (section 2X3.1), the accessory-after-the-fact guideline, to calculate Quam's base offense level. Based on trial testimony, the district court made drug-quantity findings and, using a drug-trafficking offense as the underlying crime, assessed Quam's base offense level at 14. The district court sentenced Quam to fifteen months imprisonment and two years supervised release. Quam appeals, contending (1) her grand jury testimony should be suppressed, and (2) the district court erred in using section 2X3.1 to determine Quam's offense level.

## II.   DISCUSSION

### A.   Suppression of Grand Jury Testimony

Quam argues her grand jury testimony should be suppressed because the AUSA never informed Quam of her constitutional right against self-incrimination and her right to consult an attorney. Because Quam neither requested suppression of the grand jury testimony before trial, nor objected to the admission of the evidence at trial, we review for plain error. Fed. R. Crim. P. 52(b); United States v. Wolk, 337 F.3d 997, 1003 (8th Cir. 2003) ("[T]o preserve an issue for appeal, a defendant must timely object and clearly state grounds for his objection."). "We may notice a claimed error not raised below where the error is plain, affects the defendant's substantial rights, and seriously affects the fairness or integrity of the proceedings." United States v. Sykes, 356 F.3d 863, 864 (8th Cir. 2004).

Quam's substantial rights were not violated when the AUSA did not inform Quam of her right against self-incrimination or any right to consult counsel. "When called by the grand jury, witnesses are [] legally bound to give testimony." United States v. Mandujano, 425 U.S. 564, 572 (1976). Notwithstanding this broad, general duty, the Fifth Amendment allows an individual to avoid making self-incriminating statements in grand jury proceedings by remaining silent "without risking contempt,

but it 'does not endow the person who testifies with a license to commit perjury.'" United States v. Wong, 431 U.S. 174, 178 (1977) (quoting Glickstein v. United States, 222 U.S. 139, 142 (1911)). During her grand jury testimony, Quam did not exercise her Fifth Amendment privilege to remain silent and did not make statements implicating herself in any drug offenses. Instead, Quam engaged in perjury, an option the Fifth Amendment neither permits nor protects. Id. at 179; Mandujano, 425 U.S. at 576-78, 584. The Supreme Court specifically rejected the contention that either the Fifth Amendment privilege or due process rights required an effective warning against self-incrimination be given to a witness before a grand jury. Wong, 431 U.S. at 177-78. The Supreme Court also refused to require Miranda warnings for grand jury witnesses, even if a witness is the target defendant. Mandujano, 425 U.S. at 576-84.

Quam also asks us, using our supervisory authority, to fashion a uniform rule in our circuit for instructing grand jury witnesses. We decline to do so. See United States v. Gomez, 237 F.3d 238, 241 (3d Cir. 2000) (holding an AUSA in a grand jury proceeding "did not have a constitutionally mandated obligation to advise [the defendant] that he could remain silent and that anything he said could be used against him" and further declining to exercise the court's supervisory power over grand jury proceedings to impose such an advisory rule).

We further note, upon Quam taking an oath to tell the truth, the AUSA asked Quam if she understood she could be prosecuted for perjury, if she did not tell the truth or omitted information. Quam stated she understood. The AUSA also granted Quam what the AUSA coined "informal immunity," telling Quam "what you say here today can't be used against you either directly or indirectly *with respect to these*

*drug[] charges.*" (Emphasis added).[2] The government has not prosecuted Quam for drug trafficking. These proceedings were neither unfair nor a miscarriage of justice.

### B.    Sentencing

Quam contends the district court erred in using section 2X3.1 to calculate her base offense level, because no one involved in this case was indicted or convicted of a drug-trafficking offense. "The correct application of the guidelines is a question of law subject to de novo review, while a factual determination of the sentencing court is reviewed under a clearly erroneous standard." United States v. Tirado, 313 F.3d 437, 440 (8th Cir. 2002) (citations omitted).

To determine Quam's base offense level, the district court used Quam's obstruction of justice conviction. Section 2J1.2 of Guidelines (section 2J1.2) determines the base offense level for an obstruction of justice conviction, and requires the district court apply section 2X3.1 "if the resulting offense level is greater than" the offense level provided by section 2J1.2's other subsections and if the offense obstructed a criminal investigation or prosecution. U.S.S.G. § 2J1.2(c) (2002). Section 2X3.1 provides an accessory's offense level is six "levels lower than

---

[2]We have recognized "the scope of informal immunity is governed by the terms of the immunity agreement." United States v. McFarlane, 309 F.3d 510, 514 (8th Cir. 2002) (quoting United States v. Luloff, 15 F.3d 763, 766 (8th Cir. 1994)). "The immunity agreement defines the extent of the immunity granted . . . and Fifth Amendment principles define the protection to be afforded . . . within the scope of the granted immunity." Id. During the grand jury proceedings, the government explained to Quam that her testimony could not be directly or indirectly used against her "with respect to these drug[] charges." This limiting phrase suggests the government was granting Quam immunity only from future prosecution for drug crimes about which she would be questioned. This informal immunity grant, unlike use and derivative use immunity conferred by the federal immunity statute, 18 U.S.C. § 6002, does not appear to be coextensive with Quam's Fifth Amendment privilege against self incrimination. See Kastigar v. United States, 406 U.S. 441, 443, 460-61 (1972).

the offense level for the underlying offense." U.S.S.G. § 2X3.1. Thus, section 2X3.1 only "serves as a tool for calculating the base offense level for particularly serious obstruction offenses" under section 2J1.2, United States v. Russell, 234 F.3d 404, 410 (8th Cir. 2000) (citations omitted), and "does not require that [Quam] be found in any degree to be an accessory to" an underlying crime, United States v. Blanton, 281 F.3d 771, 775 (8th Cir. 2002); see Russell, 234 F.3d at 410. The district court calculated Quam's base offense level by using trial testimony to make drug-quantity findings and then applying the drug-quantity table. The district court correctly applied section 2X3.1 in conjunction with section 2J1.2 to determine Quam's base offense level, notwithstanding the fact no one has been indicted or convicted of an underlying drug offense.

## III.   CONCLUSION

For the foregoing reasons, we affirm Quam's conviction and sentence.

_____