# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1440

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Julian Allmon, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 18, 2009
Filed: February 10, 2010

_____

Before WOLLMAN, RILEY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Appellant Julian Allmon entered into a plea agreement under which he agreed to testify for the Government. After testifying at his uncle's trial, pursuant to his plea agreement, the Government called Appellant to testify in a subsequent trial against his cousins. Appellant refused, citing the Fifth Amendment privilege against self-incrimination. The district court[1] found that Appellant had no Fifth Amendment privilege and found him guilty of contempt. Following the guidelines' instructions in regard to contempt, see U.S. Sentencing Guidelines Manual § 2J1.1 (2009), the district

_____

[1] The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

court applied § 2J1.2 (Obstruction of Justice) as an analogous guideline under § 2X5.1 (Other Offenses) and sentenced Appellant to thirty-three months' imprisonment. On appeal, we address the validity of Appellant's conviction in light of his claim for Fifth Amendment privilege and whether the district court erred in selecting § 2J1.2 as the applicable guideline rather than § 2J1.5 (Failure to Appear by a Material Witness). For the following reasons, we affirm.

I.

In November 2004, a grand jury indicted Appellant's uncle, Derek Allmon ("Derek"), for drug distribution, a firearms offense, and attempting to murder a federal witness. Subsequently, Turna Grigsby, another Government witness, was the victim of attempted murder. In August 2005, a grand jury indicted Appellant on charges of conspiracy to distribute five or more kilograms of cocaine, conspiracy to murder a government witness, and attempted murder of a government witness. The latter two of these charges concerned the attempted murder of Grigsby. In March 2006, Appellant entered into a plea agreement in which he agreed to plead guilty to the distribution charges and the Government agreed to dismiss the murder charges. The plea agreement also contained a provision under which Appellant agreed to cooperate with the Government, and, in exchange, the Government agreed to move for a downward departure if it found Appellant's cooperation truthful and substantial.

Pursuant to the plea agreement, the Government called Appellant as a witness at Derek's trial, where Appellant testified that he received and distributed cocaine through Derek. In addition, Appellant testified that, at Derek's direction, Garrick Allmon ("Garrick"), Anthony Harris, and Brandon Reed carried out the attempted murder of Grigsby. Garrick is Appellant's brother; Harris and Reed are his cousins. At the conclusion of the trial, the jury found Derek guilty on all counts.

After Derek's conviction, a grand jury indicted Harris and Reed for conspiring to kill Grigsby. At Harris and Reed's trial, the Government called Appellant to testify

pursuant to his plea agreement, expecting that he would testify in a manner consistent with his testimony at Derek's trial. Prior to taking the stand, however, Appellant's attorney stated that Appellant would claim his Fifth Amendment privilege. The grounds, according to Appellant's attorney, were that Appellant could face state prosecution and might, out of fear of reprisal, deviate from his previous testimony, subjecting himself to perjury charges. The district court found that Appellant had no Fifth Amendment privilege and ordered Appellant to take the stand. When Appellant took the stand, the Government asked Appellant, "I understand that you do not want to testify against [your cousins]; is that correct?" Appellant responded, "Yes." The district court again ordered Appellant to testify. Despite the court's order, Appellant continued in his refusal. The district court cited Appellant for contempt of court. Appellant then indicated that he was willing to answer questions from his cousins' defense attorneys, but not from the Government. After the district court informed Appellant that this was not an option, Appellant stated that he would not testify at all. At the conclusion of the trial, Harris and Reed were acquitted of all charges.

Subsequently, the Government filed a notice of contempt of court pursuant to 18 U.S.C. § 401. The district court issued Appellant a notice and order to show cause why he should not be held in contempt of court for his failure to comply with the court's order. Appellant then filed a motion to dismiss, arguing that he had a valid Fifth Amendment privilege, thus eliminating the "willfulness" element of contempt. The district court rejected Appellant's argument, finding that the grounds on which Appellant's Fifth Amendment claim rested were insufficient to permit his refusal to testify. Following denial of the motion to dismiss, Appellant waived his right to a jury trial and agreed to submit the matter to the district court. The district court found appellant guilty beyond a reasonable doubt of criminal contempt.

Because there is no sentencing guideline for contempt convictions, see U.S.S.G. § 2J1.1, the guidelines instruct district courts to apply the most analogous offense guideline, see U.S.S.G. § 2X5.1. The district court applied § 2J1.2, which has a base

-3-

offense level of fourteen. The court then increased the offense level by three, finding, under § 2J1.2(b)(2), that Appellant's conduct resulted in a "substantial interference with the administration of justice" because, had Appellant testified at the Harris and Reed trial, there was "a reasonable possibility and maybe a probability that the jury would have convicted the defendants." However, the district court also reduced his offense level by three, under § 3E1.1, for Appellant's acceptance of responsibility, resulting in a total offense level of fourteen. When factoring in Appellant's criminal history category of IV, the advisory range was twenty-seven to thirty-three months. The district court sentenced Appellant to thirty-three months. On appeal, Appellant argues that, because he had a valid Fifth Amendment privilege, there is insufficient evidence to support a conviction for contempt. He also argues that the district court erred in selecting § 2J1.2 as an analogous guideline, rather than § 2J1.5.

II.

A court's determination of whether a witness has a valid claim for exercising the Fifth Amendment privilege against self-incrimination is highly fact-intensive. Accordingly, we review a district court's decision not to permit a witness to invoke his Fifth Amendment privilege for abuse of discretion. See United States v. Washington, 318 F.3d 845, 856 (8th Cir. 2003). Appellant contends that the district court abused its discretion in finding that he had no Fifth Amendment right, and therefore had insufficient evidence with which to find him guilty of contempt because his contempt was not willful. We disagree.

A valid assertion of the Fifth Amendment privilege is a defense to a contempt charge because it negates the willfulness requirement. See United States v. Quam, 367 F.3d 1006, 1008 (8th Cir. 2004). But the rights under the Fifth Amendment are not self-executing. It is a well-established rule that the Fifth Amendment privilege against self-incrimination must be asserted in a timely fashion by the person seeking its protection. Roberts v. United States, 445 U.S. 552, 559 (1980); Island v. United States, 946 F.2d 1335, 1339 (8th Cir. 1991). The claimant must make some positive

-4-

disclosure showing that the danger of self-incrimination is "real and appreciable, not remote and speculative." Ueckert v. Comm'r, 721 F.2d 248, 250 (8th Cir. 1983). Accordingly, we must look to the grounds on which Appellant asserted his Fifth Amendment privilege.

At trial, Appellant cited three justifications for refusing to testify. First, he asserted that his testimony could subject him to state prosecution. Second, he suggested that he might not be truthful in his testimony due to a fear of reprisal from other prison inmates, thereby subjecting him to perjury charges. Third, when Appellant took the stand, he simply stated that he did not want to testify against his cousins. There is no question that the third justification does not provide valid grounds on which to assert the Fifth Amendment privilege. See Rogers v. United States, 340 U.S. 367, 371 (1951) ("[R]efusal to answer cannot be justified by a desire to protect others from punishment."). Accordingly, we focus on Appellant's first two justifications.

As to Appellant's first justification, it is established that the threat of future prosecution of a witness arising from that witness's testimony is precisely the harm that the Fifth Amendment is designed to protect. See United States v. Gianakos, 415 F.3d 912, 919 (8th Cir. 2005). However, Appellant failed to meet his burden of demonstrating the presence of that danger in this case. The testimony that the Government sought to elicit in the Harris and Reed trial was precisely the same as that which Appellant had already given at Derek's trial. Testifying consistently with his prior testimony would not expose Appellant to any further jeopardy beyond that which existed by virtue of prior testimony. We recognize that there is ample precedent for the rule that waiver of the Fifth Amendment privilege in one proceeding does not waive that privilege in a subsequent proceeding, often because circumstances have changed between the two proceedings. See, e.g., United States v. Burch, 490 F.2d 1300, 1303 (8th Cir. 1974); United States v. Licavoli, 604 F.2d 613, 623 (9th Cir. 1979); United States v. Cain, 544 F.2d 1113, 1117 (1st Cir. 1976); In re Neff, 206

-5-

F.2d 149, 152 (3d Cir. 1953). Accordingly, our decision should not be read to hold that Appellant waived his Fifth Amendment privilege by testifying at Derek's trial. He did not. To the extent that Appellant asserted some new ground for apprehension, he could perhaps maintain a claim for Fifth Amendment privilege. But Appellant made no such argument in this case; he merely asserted a blanket refusal to testify.[2] Without this showing, we cannot find that the district court abused its discretion in refusing to permit Appellant to assert his Fifth Amendment privilege.

The district court characterized Appellant's second justification as simply a Fifth Amendment claim based on fear of reprisal. This is an invalid basis for asserting the Fifth Amendment privilege. See In re Long Visitor, 523 F.2d 443, 448 (8th Cir. 1975) ("[I]t is well established that fear of reprisal cannot excuse a witness from testifying."). Appellant, however, argued to the district court that the basis for asserting the privilege was not reprisal, but the fear of a perjury prosecution arising out of his fear of testifying truthfully at the second trial. While it is somewhat difficult to determine what exactly Appellant claimed at trial to be the basis of his Fifth Amendment claim, we agree with Appellant that the question is more complex than whether fear of reprisal, by itself, is a valid ground for asserting that privilege. At trial, the following exchange took place:

> MR. HENDRIX: I think the threat is if Julian were to testify today and he says anything materially different than what he said in the Derek Allmon trial, there's a realistic threat of perjury prosecution, so I think he has a valid Fifth Amendment Claim.
>
> THE COURT: Don't I have to assume that since he was under oath he testified truthfully in the first trial, in the Derek Allmon trial?

---

[2] To the extent Appellant argues that Harris and Reed's attorneys would try to incriminate him on cross-examination, Appellant's willingness to answer questions from the defense but not the Government contradicts this claim.

MR. HENDRIX: I think that would probably be fair.

THE COURT: If I make that assumption, don't I have to assume that he will be under oath and will testify truthfully at this trial?

MR. HENDRIX: In light of what just happened, *I'm not sure we can make that assumption*.

THE COURT: What do you mean just happened?

MR. HENDRIX: By what happened yesterday in him telling me, "I'm afraid now to testify," that there may be ramifications to this, so that may change. . . . *I think the Fifth Amendment claim is if his testimony changes out of his fear, then he likely faces a perjury prosecution.*

Thus, Appellant's argument appears to be that at Derek's trial, he testified truthfully, but at Harris and Reed's trial, where the Government sought to elicit the same testimony, Appellant was afraid of the potential repercussions of a repeat-performance and thus was unlikely to tell the truth. By electing to lie, and deviate from the testimony he gave at Derek's trial, Appellant's argument is that he could have been subject to perjury charges arising from the second proceeding, and could therefore avail himself to the Fifth Amendment privilege.

Appellant's claim is somewhat unusual. When dealing with the intersection between the Fifth Amendment and perjury, we have stated that the Fifth Amendment's protection against self-incrimination does not confer upon a witness the right to commit perjury. See, e.g., Quam, 367 F.3d at 1008. However, we have also stated that a witness may invoke the Fifth Amendment privilege and refuse to testify in a later proceeding if truthful testimony in that later proceeding will reveal perjury that occurred in a *past* proceeding. See In re Grand Jury Subpoena, 739 F.2d 1354, 1360 (8th Cir. 1984). We have not, however, directly addressed the issue in this case: Whether a witness can assert the Fifth Amendment privilege when his fear of perjury arises out of his current refusal to testify truthfully and thus risk committing perjury

-7-

at the *present* proceeding. We hold that the Fifth Amendment does not confer such a right.

While we have not directly addressed the issue, case law indicates that the Fifth Amendment confers no right upon a witness to avoid testifying simply because he refuses, for one reason or another, to do so truthfully. See, e.g., Zicarelli v. N.J. State Comm'n of Investigation, 406 U.S. 472, 480 (1972) ("When considering whether a claim of the privilege should be sustained, the court focuses inquiry on what a *truthful* answer might disclose . . . .") (emphasis added); Grand Jury Subpoena, 739 F.2d at 1360 ("[I]f upon questioning by the grand jury a *truthful* response would be inconsistent with [the witness's] trial testimony, . . . [the witness] would have the right to invoke his Fifth Amendment privilege against self-incrimination.") (emphasis added); Evans v. City of Chicago, 513 F.3d 735, 743 (7th Cir. 2008) ("'To be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if one did answer it (*and answer it truthfully*) must have *some* tendency to subject the person being asked the question to criminal liability.'") (citation omitted, emphasis added). Further, those courts that have directly addressed the issue have held that the Fifth Amendment is concerned with perjury arising from past testimony, not present testimony. See, e.g., United States v. Vavages, 151 F.3d 1185, 1192 n.3 (9th Cir. 1998) ("Fear of a perjury prosecution can typically form a valid basis for invoking the Fifth Amendment only where the risk of prosecution is for perjury in the witness' *past* testimony."); United States v. Partin, 552 F.2d 621, 632 (5th Cir. 1977) (same). That, however, was not the argument that Appellant made to the district court. Thus, the district court did not abuse its discretion in finding that Appellant had no Fifth Amendment privilege and therefore willfully engaged in criminal contempt by disobeying the court's order.

III.

Appellant next argues that the district court erred in its sentencing determination. The sentencing guideline for contempt, § 2J1.1, does not provide a base offense level. Rather, it references § 2X5.1, which instructs the district court to apply the most analogous guideline. Appellant argues that the district court erred in selecting as the analogous guideline § 2J1.2 (Obstruction of Justice), rather than § 2J1.5 (Failure to Appear by a Material Witness). "[W]e review *de novo* the court's determination of whether there is a sufficiently analogous guideline, and, where there are several analogous guidelines, we give due deference to the court's fact-bound selection of the most analogous guideline." United States v. Ferrara, 334 F.3d 774, 777 (8th Cir. 2003). There is no question here that an analogous guideline exists, so we confine our analysis to whether the district court erred in its selection.

"The Sentencing Commission did not provide a specific guideline because 'misconduct constituting contempt varies significantly' and is 'highly context-dependent.'" Id. (quoting U.S.S.G. § 2J1.1 cmt. app. n. 1). It is apparent, however, that the Commission envisioned—in at least some cases—that § 2J1.2 would be an analogous guideline. See U.S.S.G. § 2J1.1 cmt. app. n. 1. ("In certain cases, the offense conduct will be sufficiently analogous to § 2J1.2 (Obstruction of Justice) for that guideline to apply."). Our Court has not yet addressed the issue at hand. However, the courts that have addressed the issue have found application of § 2J1.2 appropriate in contempt cases where a witness's refusal to testify was motivated by a desire to impede prosecution or protect coconspirators, rather than an "abstract desire" not to testify. See, e.g., United States v. Myers, 302 F. App'x 201, 205–06 (4th Cir. 2008) (unpublished per curiam) (finding no error in district court's application of § 2J1.2 where the defendant "failed to appear in an *attempt to impede*" investigation) (emphasis added); United States v. Brennan, 395 F.3d 59, 74 (2d Cir. 2005) (noting that all of the guidelines' examples of obstruction of justice "describe conduct that actually and directly *seeks to hinder or corrupt* a judicial proceeding.") (emphasis

added); United States v. Alwan, 279 F.3d 431, 440–41 (7th Cir. 2002) (same); United States v. Brady, 168 F.3d 574, 579 (1st Cir. 1999) (same); cf. United States v. Ortiz, 84 F.3d 977, 982 (7th Cir. 1996) (finding that § 2J1.2 is inappropriate where "there is nothing to truly indicate that [the witness's] refusal to testify was designed to assist [the defendant] in escaping punishment."); United States v. Underwood, 880 F.2d 612, 620 (1st Cir. 1989) (finding that § 2J1.5 was not applicable because the defendant "did not intend to 'obstruct justice'").

The cases and the guidelines demonstrate the fact-intensive nature of selecting an analogous guideline in contempt cases. Here, the facts support the district court's determination. The court determined, and the record reveals, that Appellant's reason for refusing to testify arose, in part, out of his desire not to testify against his cousins. In other words, he sought to hinder their prosecution. This is clear from Appellant's response to the Government's question in regard to why Appellant sought Fifth Amendment protection. Further, Appellant told the district court that he would respond to questioning from defense counsel, but not from the Government. This is another indication of Appellant's motives, demonstrating his desire to avoid answering questions that would potentially incriminate his cousins.

Appellant cites a number of cases in support of his position. But his reliance on these cases is misplaced, as they stand for no more than that the selection of an analogous guideline in contempt cases is a fact-bound determination with an often debatable outcome. In Underwood, the first case on which Appellant relies, the First Circuit found that § 2J1.5, rather than § 2J1.2, was analogous in a contempt case because the district court found that the defendant "asserted his Fifth Amendment claim in good faith . . . [he] did not intend to 'obstruct justice;' he simply intended not to testify." 880 F.2d at 620. But, as we have stated, there is evidence here of Appellant's intent to obstruct. Further, the First Circuit has read Underwood narrowly, declaring that it was a unique case and "reiterat[ing] that the question of which

[guideline] is the most appropriate analogy depends on the facts of the case." <u>United States v. Marquardo</u>, 149 F.3d 36, 45 (1st Cir. 1998).

Appellant's reliance on <u>United States v. Cefalu</u>, 85 F.3d 964 (2d Cir. 1996), and <u>United States v. Herre</u>, 731 F. Supp. 1051 (S.D. Fla. 1990), is equally unpersuasive. In <u>Cefalu</u>, the court found only that there was no precedent *requiring* application of § 2J1.2 in contempt cases. 85 F.3d at 968. Citing the fact-intensive nature of the inquiry and the deference due to the district court, the Second Circuit found no error had occurred when the district court applied a guideline other than § 2J1.2 in a contempt case. <u>Id.</u> Likewise, the district court in <u>Herre</u> noted only that § 2J1.2 is not mandatory in contempt cases and found that where there was no evidence of a design to interfere, § 2J1.2 is not appropriate. 731 F. Supp. at 1052. As stated above, the record indicates such evidence existed in the case at hand. Thus, while these cases may demonstrate that the question as to what guideline should apply is fact-sensitive and often debatable, a debatable issue is not enough to overcome the deference due to the district court. Accordingly, we find that the district court did not err in applying § 2J1.2 as the analogous guideline under § 2X5.1.

IV.

For the foregoing reasons, we affirm the district court.

_____

-11-